**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| VENESSA DOBNEY,<br><br>       Plaintiff,<br><br>   v.<br><br>THE WALT DISNEY COMPANY, *et al*.,<br><br>       Defendants. | Case No.: 1:23-cv-05380-JPO<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

**McDERMOTT WILL & EMERY LLP**

Stephania C. Sanon
One Vanderbilt Avenue
New York, New York 10017-3852
Tel: (212) 547-5400

Kerry Alan Scanlon (*pro hac vice*)
500 North Capitol Street, N.W.
Washington, DC 20001
Tel: (202) 756-8696

Dated:  August 25, 2023

*Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 2

    I.    Plaintiff's Complaint Must Contain Sufficient Factual Allegations to State a Claim for Discrimination and Retaliation That is Plausible on Its Face ................. 2

    II.    Plaintiff Has Not Alleged a Plausible Claim of Disparate Treatment Based on Race ................................................................................................................... 4

        A.    Alleged Use of Harsh Language and Scrutinizing Plaintiff's Work Are Not Actionable ................................................................................... 4

        B.    Alleged Lack of a Preferred Office, Not Having Direct Reports, and Not Being Allowed to Interview Candidates Are Also Not Actionable ................................................................................................. 6

        C.    Alleged Assignment of An Excessive Workload Is Not Actionable ........... 7

    III.    Plaintiff Has Not Plausibly Alleged a Denial of Promotion Based on Her Race .... 8

        A.    Promotion to Senior Manager ..................................................................... 9

        B.    Promotion to Senior Manager for Digital .................................................. 11

        C.    Lateral Promotion Opportunity .................................................................. 13

    IV.    Plaintiff Has Not Met the Requirements for a Retaliation Claim .......................... 13

        A.    Plaintiff Fails to Plausibly Allege She Engaged in Protected Activity ................................................................................................... 14

        B.    Plaintiff Cannot Plausibly Allege a Causal Connection Because the Challenged Conduct Pre-Dated the Alleged Protected Activity ................ 16

        C.    Plaintiff Fails To Plausibly Allege Defendants Engaged in Conduct That Is Reasonably Likely to Deter a Person from Engaging in Protected Activity ...................................................................................... 17

    V.    Plaintiff Has Not Plausibly Alleged a Claim for Disparate Pay ........................... 18

    VI.    Plaintiff Has Not Alleged a Plausible Claim for Constructive Discharge ............. 19

    VII.    Plaintiff Has Not Plausibly Alleged a Claim of Aiding and Abetting ................... 20

    VIII.    Plaintiff Has Not Alleged a Plausible Claim of Supervisor Liability .................... 21

IX.    Plaintiff Has Not Plausibly Alleged That ABC and Disney Are a Single Employer.................................................................................................................21

CONCLUSION....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarado v. United Hospice, Inc.*,
631 F. Supp. 3d 89 (S.D.N.Y. 2022)........................................................................................3

*Arculeo v. On-Site Sales & Mktg., LLC*,
425 F.3d 193 (2d Cir. 2005)...................................................................................................22

*Ariza v. Cohen Bros. Realty*,
2022 WL 912940 (S.D.N.Y. Mar. 28, 2022) ...........................................................................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................................... *passim*

*Bautista v. PR Gramercy Square Condo.*, 2022 WL 17156628 (S.D.N.Y. Nov. 22,
2022) .......................................................................................................................7, 8, 20, 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................1, 2, 12

*Brown v. Daikin Am. Inc.*,
756 F.3d 219 (2d Cir. 2014)...................................................................................................22

*Burgis v. New York City Dep't of Sanitation*,
798 F.3d 63 (2d Cir. 2015).....................................................................................................10

*Carmon v. Dance*,
2021 WL 232121 (E.D.N.C. Jan. 22, 2021) ..........................................................................10

*Charles v. City of New York*,
2023 WL 2752123 (S.D.N.Y. Mar. 31, 2023) .......................................................................19

*Collins v. Indart-Etienne*,
72 N.Y.S.3d 332 (N.Y. Sup. Ct. 2018) ...................................................................................4

*Concepcion v. City of New York*,
2016 WL 386099 (S.D.N.Y. Jan. 29, 2016), *aff'd*, 693 F. App'x 31 (2d Cir. 2017)...............12

*Cunningham v. New York State Dep't of Lab.*,
326 F. App'x 617 (2d Cir. 2009) .............................................................................................6

*Dobney v. The Walt Disney Co.*,
Case No. 1:23-cv-02282-JPO (S.D.N.Y.)...........................................................................1, 16

## TABLE OF AUTHORITIES (CON'T)

**Page(s)**

*Dorwich-Weeks v. Cooper Square Realty*,
535 F. App'x 9 (2d Cir. 2013) ...................................................................................6

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998)..............................................................................................1, 5

*Farmer v. Shake Shack Enters., LLC*,
473 F. Supp. 3d 309 (S.D.N.Y. 2020)......................................................................20

*Fattoruso v. Hilton Grand Vacations Co., LLC*,
873 F. Supp. 2d 569 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013)....................4, 14

*Fenner v. News Corp.*,
2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) .............................................................24

*Gaughan v. Rubenstein*,
261 F. Supp. 3d 390 (S.D.N.Y. 2017)........................................................................5

*Girardi v. Ferrari Express, Inc.*,
2023 WL 2744027 (S.D.N.Y. Mar. 31, 2023) ............................................................3

*Gordon v. City of New York*,
2015 WL 3473500 (S.D.N.Y. June 2, 2015) ..............................................................4

*Guity v. Uniondale Union Free Sch. Dist.*,
2017 WL 9485647 (E.D.N.Y. Feb. 23, 2017)..............................................................7

*Hristova v. 3321 Astoria Inc.*,
2018 WL 4006880 (E.D.N.Y. June 27, 2018) ...........................................................21

*Lettieri v. Anti-Defamation League*,
2023 WL 5152447 (S.D.N.Y. Aug. 10, 2023)..........................................................2, 4

*Marcus v. Leviton Mfg. Co., Inc.*,
661 F. App'x 29 (2d Cir. 2016) ................................................................................2

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013)..................................................................................3, 14

*Moazzaz v. Metlife*,
2021 WL 827648 (S.D.N.Y. Mar. 4, 2021) .....................................................14, 15, 17

*Moy v. Perez*,
712 F. App'x 38 (2d Cir. 2017) ...............................................................................12

**TABLE OF AUTHORITIES (CON'T)**

**Page(s)**

*Mucciarone v. Initiative Inc.*,
  2020 WL 1821116 (S.D.N.Y. Apr. 10, 2020)....................................................................17, 18

*Musiello v. CBS Corp.*,
  518 F. Supp. 3d 782 (S.D.N.Y. 2021)..................................................................................23

*Nguyen v. Dep't of Corr. & Cmty. Servs.*,
  169 F. Supp. 3d 375 (S.D.N.Y. 2016)..................................................................................12

*Pollock v. Shea*,
  568 F. Supp. 3d 500 (S.D.N.Y. 2021)..................................................................................19

*Rahman v. Limani 51, LLC*,
  2022 WL 3927814 (S.D.N.Y. Aug. 31, 2022)......................................................................22

*Ramirez v. Temin & Co., Inc.*,
  2021 WL 4392303 (S.D.N.Y. Sept. 24, 2021)........................................................................7

*Reppert v. New York State Dep't of State*,
  2020 WL 4346932 (N.D.N.Y. July 28, 2020) ......................................................................13

*Richards v. Dep't of Educ. of City of New York*,
  2022 WL 329226 (S.D.N.Y. Feb. 2, 2022)..........................................................................5, 7

*Shiflett v. Scores Holding Co.*,
  601 F. App'x 28 (2d Cir. 2015) ...........................................................................................22

*Shultz v. Congregation Shearith Israel of City of New York*,
  867 F.3d 298 (2d Cir. 2017)................................................................................................14

*Staff v. Pall Corp.*,
  233 F. Supp. 2d 516 (S.D.N.Y. 2002), *aff'd*, 76 F. App'x 366 (2d Cir. 2003).........................6

*Staten v. City of New York*,
  2015 WL 4461688 (S.D.N.Y. July 20, 2015), *aff'd*, 653 F. App'x 78 (2d Cir.
  2016) ..........................................................................................................................8, 10, 13

*Syeed v. Bloomberg L.P.*,
  568 F. Supp. 3d 314 (S.D.N.Y. 2021)..................................................................................3, 9

*Tsaganea v. City Univ. of New York, Baruch Coll.*,
  441 F. App'x 12 (2d Cir. 2011) ...........................................................................................12

*Tulino v. City of New York*,
  813 F. App'x 725 (2d Cir. 2020) .........................................................................................19

## TABLE OF AUTHORITIES (CON'T)

**Page(s)**

*United States v. New York City Dep't of Educ.*,
   407 F. Supp. 3d 365 (S.D.N.Y. 2018)..................................................................20, 21

*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015).....................................................................................2, 3

*Velez v. Novartis Pharms. Corp.*,
   244 F.R.D. 243 (S.D.N.Y. 2007), *amended* (Aug. 16, 2007) ..................................24

*Vinokur v. Sovereign Bank*,
   701 F. Supp. 2d 276 (E.D.N.Y. 2010) .....................................................................16

*Weiss v. Starr Rest. Org., LP*,
   2021 WL 3099895 (S.D.N.Y. July 21, 2021) ...........................................................23

*Wilson v. JP Morgan Chase Bank, N.A.*,
   2021 WL 918770 (S.D.N.Y. Mar. 10, 2021) ......................................................17, 19

## Statutes

42 U.S.C. § 1981.............................................................................................................1

42 U.S.C. § 2000e...........................................................................................................1

## Other Authorities

N.Y.C. Admin. Code § 8-107(13)...................................................................................21

## PRELIMINARY STATEMENT

This is plaintiff's second failed attempt to plead facts from which this Court can plausibly infer that the defendants discriminated against her because of her race and then retaliated against her for engaging protected activity.[1] Thus, although plaintiff contends that she experienced "sustained race-based discrimination" and a "campaign of discrimination and retaliation against people of color" during her ten-year tenure in the ABC News Finance Department, she still has failed to identify a single statement, comment or anecdote with a racial connotation or a single example of racial or retaliatory animus. Instead, plaintiff's complaint still merely consists of unsupported conclusions and vignettes about "ordinary tribulations of the workplace"[2]—*e.g.*, the failure to award a desired office—all of which she claims, *ipse dixit,* only happened because she is black. However, notwithstanding the detailed roadmap in defendants' prior motion to dismiss, plaintiff failed to cure any of the original pleading deficiencies and instead continues to simply plead conclusions, without any of the supporting "factual content" *Iqbal* and *Twombly* require.

Indeed, plaintiff's failure to plausibly allege that any of the challenged actions were done at least in part *because of* discrimination or retaliation is the common denominator of all of plaintiff's remaining state and city law claims for disparate treatment, denial of promotion, retaliation, unequal pay, constructive discharge, aiding and abetting (only against the individual

---

[1] Previously, defendants moved to dismiss the complaint plaintiff originally filed in this Court. *Dobney v. The Walt Disney Co.*, Case No. 1:23-cv-02282-JPO (S.D.N.Y.), Doc. 16, 17. In response, plaintiff notified the court that she would file an amended complaint by June 23, 2023, rather than "rely on the pleading being attacked." *Id.* at Doc. 18, 19, Letters. Ultimately, however, plaintiff did not amend her complaint and instead filed a notice of voluntary dismissal without prejudice (*id.* at Doc. 20, 21, Notice of Voluntary Dismissal) and filed the instant complaint in the Supreme Court of the State of New York, New York County, which all defendants promptly removed to this Court based on diversity jurisdiction. The biggest difference between the second and first complaint is that plaintiff dropped her federal claims under Title VII, 42 U.S.C. § 2000e *et seq.*, and Section 1981, 42 U.S.C. § 1981 as part of plaintiff's forum and judge shopping.

[2] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

defendants) and supervisor liability (against only the corporate defendants).  There is no direct evidence of any racial or retaliatory motive and the circumstantial evidence fails to identify any employees of a different race who were similarly situated in all material respects and who were treated more favorably than the plaintiff.

State and federal courts in New York have dismissed the very same types of claims plaintiff asserts here, and have done so even under the more lenient pleading requirements of the NYCHRL.  Plaintiff should not be permitted yet another chance to amend her complaint, which should now be dismissed with prejudice.

## ARGUMENT

**I.     Plaintiff's Complaint Must Contain Sufficient Factual Allegations to State a Claim for Discrimination and Retaliation That is Plausible on Its Face**

To survive a motion to dismiss under *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  A claim is only facially plausible "when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).  In other words, a complaint "must at a minimum assert *nonconclusory factual matter* sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 89 (2d Cir. 2015) (*quoting Iqbal*, 556 U.S. at 680) (internal quotation marks removed) (emphasis added).  And it is well-settled that the pleading requirements established in *Twombly* and *Iqbal* apply to discrimination and retaliation claims asserted under the NYSHRL and NYCHRL.  *See Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 31 (2d Cir. 2016); *Lettieri v. Anti-Defamation League*, 2023 WL 5152447, at *11 (S.D.N.Y. Aug. 10, 2023).

Generally, NYSHRL discrimination claims based on conduct that occurred prior to October 11, 2019 are analytically identical to Title VII claims.[3]  And because plaintiff's alleged discrimination claims include conduct that occurred before October 11, 2019, the Title VII framework, and not the NYCHRL framework, applies to plaintiff's NYSHRL claims. Accordingly, to defeat this motion to dismiss, plaintiff must plausibly allege that she suffered an "adverse employment action" and that defendant's discriminatory intent was a motivating factor of that action.  *See Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 117 (S.D.N.Y. 2022).

The "nonconclusory factual matter" *Iqbal* requires for NYCHRL discrimination claims must be specific enough to make a plausible showing that the plaintiff was treated "less well" than other employees *because of* discriminatory intent.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89 (2d Cir. 2015); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  However, the Second Circuit has cautioned that the NYCHRL is not a "general civility code" and that the "plaintiff still bears the burden of showing that the conduct was caused by a discriminatory motive."  *Mihalik*, 715 F.3d at 113; s*ee also Syeed v. Bloomberg L.P.,* 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021).

In any event, the "factual" allegations here fail to satisfy either the State or City pleading standard because plaintiff has not—and apparently cannot—allege any facts that make a plausible showing that any of defendants' alleged conduct was racially motivated.

With respect to her retaliation claims, plaintiff was required to plausibly allege that she was subjected to retaliation that "was reasonably likely to deter a person from engaging in action

---

[3]  October 11, 2019 was the effective date of the amendment to the NYSHRL as a result of which the NYSHRL standard became more closely aligned with the more liberal standard of the NYCHRL.  *See, e.g., Girardi v. Ferrari Express, Inc.*, 2023 WL 2744027, at *6 n.4 (S.D.N.Y. Mar. 31, 2023); *Ariza v. Cohen Brothers Realty*, 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022).

opposing [her] employer's discrimination" after she opposed a practice prohibited under New York law. *Gordon v. City of New York*, 2015 WL 3473500, at *13 (S.D.N.Y. June 2, 2015); *see also Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 580 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013).[4]  Under the NYSHRL and NYCHRL, "[p]rotected activity is defined as conduct opposing or complaining about *unlawful* discrimination," *Collins v. Indart-Etienne*, 72 N.Y.S.3d 332, 352 (N.Y. Sup. Ct. 2018) (emphasis added), and a complaint must plausibly allege a causal connection between the protected activity and the employer's challenged conduct. *Lettieri*, 2023 WL 5152447, at *11.  Plaintiff has failed to meet this pleading standard as well.

## II.    Plaintiff Has Not Alleged a Plausible Claim of Disparate Treatment Based on Race

### A.    Alleged Use of Harsh Language and Scrutinizing Plaintiff's Work Are Not Actionable

In support of her disparate treatment claim, plaintiff relies on two moments in her ten-year career at ABC News when someone allegedly spoke harshly to her.  Neither one involves any racial animus.  First, plaintiff alleges that at some unidentified date in 2019, defendant Richard McHale "was aggressive and verbally abusive" to her and that "he yelled, cursed, and belittled her."  Compl. ¶¶ 35, 36.  However, plaintiff fails to include any details or further description of this 2019 interaction, including what exactly (or even generally) Mr. McHale allegedly said.[5]  Similarly, plaintiff alleges that Mr. McHale "cursed and yelled at her during a

---

[4]  Because plaintiff's retaliation claims are principally based on conduct that occurred after NYSHRL's 2019 amendment, the analytical framework under the NYSHRL and the NYCHRL is the same.  Compl. ¶ 47.

[5]  While plaintiff conclusorily alleges that McHale treated her "differently from her non-Black counterparts," she fails to include a single, specific factual detail from which the court can possibly glean who the "counterparts" were, how he treated them "differently," or how plaintiff would even know how he treated others.  *Id.* ¶ 33.  This allegation is so generalized and unsupported that the Court can only speculate about the contents and context of what exactly is being alleged.

4

Zoom call" in March 2020.  *Id.* ¶ 45.  Once again, plaintiff fails to provide any specifics of what

Mr. McHale is alleged to have said.  At best, these two instances are nothing more than isolated

stray remarks, none of which even remotely suggests that what Mr. McHale said evinced any

racial connotation.

Under the NYSHRL/Title VII standard, the U.S. Supreme Court held in *Faragher v.*

*Boca Raton* that the pleading requirements "are sufficiently demanding to ensure that Title VII

does not become a 'general civility code' . . . Properly applied, they will *filter out complaints*

attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive

language, gender-related jokes, and occasional teasing.'"  524 U.S. at 788 (emphasis added).

The Court concluded that "[w]e have made it clear that conduct must be *extreme* to amount to a

change in the terms and conditions of employment."  *Id.* (emphasis added).  Without the

specifics of McHale's alleged comments, the Court has no basis whatsoever to conclude, much

less infer, that any of what McHale allegedly said was either extreme or plausibly connected to

any racially discriminatory intent as required to satisfy the NYSHRL/Title VII standard or that of

the NYCHRL.[6]

---

[6]  *See, e.g., Richards v. Dep't of Education of City of New York*, 2022 WL 329226, at *10
(S.D.N.Y. Feb. 2, 2022) (disparate treatment claims under Title VII, NYSHRL and NYCHLR
dismissed because complaint lacked "racially or religiously derogatory terms or . . . invidious
comments about others of Plaintiff's race or religion.  Instead, the Amended Complaint relies on
allegations that Plaintiff was treated less favorably than employees outside of Plaintiff's
protected group who Plaintiff asserts are similarly situated.  But the pleading falls short because
it either does not identify similarly situated employees or, for the employees it does identify, the
pleading does not provide facts to support that they are similarly situated in all material
respects"); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 416-17 (S.D.N.Y. 2017) (dismissing
allegations that plaintiff's supervisor "yelled" at her, "aggressively invaded [her] personal
space," and "acted rudely toward her" because there was no basis for inferring that the conduct
was motivated by discriminatory animus).

**B.  Alleged Lack of a Preferred Office, Not Having Direct Reports, and Not Being Allowed to Interview Candidates Are Also Not Actionable**

It is well-established that "everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII." *Cunningham v. New York State Dep't of Lab.*, 326 F. App'x 617, 619 (2d Cir. 2009).  In *Cunningham*, the plaintiff alleged a "litany of actions" similar to those alleged here, including reassignment of the plaintiff's office location, excluding plaintiff from a work conference and from a decision to hire an outside consultant, discontinuing a training conference organized by plaintiff, and unfounded charges of time abuse.  *Id.* at 619.  The Second Circuit held that these allegations, "do not, as a matter of law, amount to a materially adverse change in the terms or conditions of his employment." *Id.*[7]  And yet, that is all plaintiff alleges to support her claim of "sustained race-based discrimination":  she did not get the office she wanted (Compl. ¶ 36); she was not assigned a direct report (*id.* ¶¶ 27-30) or she was assigned a direct report who was too busy (*id.* ¶ 41); and she was not asked to interview candidates for positions on the team (*id.* ¶ 37).  As *Cunningham* and its progeny confirm, none of these alleged workplace events constitutes an adverse employment action under the NYSHRL.

Likewise, the plaintiff's foregoing allegations fail to plausibly state a cause of action under the NYCHRL because they do not "sufficiently allege comparators from which differential

---

[7]  Many courts in this Circuit have made similar findings, including with respect to the assignment of direct reports.  *See, e.g., Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 531 (S.D.N.Y. 2002), *aff'd*, 76 F. App'x 366 (2d Cir. 2003) (allegations that plaintiff's employer "failed to provide him with an office or with employees to supervise" and that a project he supervised was transferred to a white employee "simply do not rise to the level of being actionable adverse employment actions"); *Dorwich-Weeks v. Cooper Square Realty*, 535 F. App'x 9, 11-12 (2d Cir. 2013) (affirming dismissal of complaint which alleged that plaintiff was moved from an office to a cubicle, that a vice president made negative remarks about her to a client, and that plaintiff was not permitted to take advantage of an alternative work schedule, because none of these actions constituted "a materially adverse change in the terms and conditions of employment").

6

treatment can be deduced, nor [do they] give rise to the inference that [plaintiff] was treated differently *because of* [her] race." *Bautista v. PR Gramercy Square Condo.*, 2022 WL 17156628, at *9 (S.D.N.Y. Nov. 22, 2022) (emphasis in original). And when there is no direct evidence of discrimination, specific comparator evidence—not unsupported conclusions—is required at the pleading stage to defeat a motion to dismiss. Here plaintiff alleges only that "McHale did not give Ms. Dobney the same responsibilities or opportunities as her non-Black colleagues." She fails to provide *any* information about these unnamed colleagues, much less make a plausible showing that they were similarly situated in every material respect so as to warrant an inference of discrimination. *See also Richards*, 2022 WL 329226, at *20 (bare allegation that employer treated plaintiff differently than colleagues was insufficient under the NYCHRL to establish inference of discriminatory motive).

## C. Alleged Assignment of An Excessive Workload Is Not Actionable

Courts in this Circuit have repeatedly found that non-specific allegations that an employee was assigned an excessive workload compared to similarly situated co-workers do not constitute actionable discrimination under the NYSHRL/Title VII standard.[8] Here, plaintiff has failed to provide the "nonconclusory factual matter" *Iqbal* requires and instead simply alleges that she had a "burgeoning workload" in 2019 (Compl. ¶ 41), that her responsibilities were "doubled" in late 2020 (without alleging what the impact was on her actual workload) (*id.* ¶ 59), that she was "doing the job of more than three people" (*id.* ¶ 60), that she "had a spiraling

---

[8]   *See, e.g., Ramirez v. Temin & Company, Inc.*, 2021 WL 4392303, at *2, *12 (S.D.N.Y. Sept. 24, 2021) (dismissing claims that the plaintiff, who was the only black employee, was asked to continue submitting twice-daily activity reports after the other employees including new hires were not asked to do so); *Guity v. Uniondale Union Free Sch. Dist.*, 2017 WL 9485647, at *16-17 (E.D.N.Y. Feb. 23, 2017) (dismissing a black plaintiff's claim that she was required to teach an extra class that was only optional for similarly-situated Hispanic colleagues, holding that the additional teaching load was nothing more "than a general workplace grievance, disappointment or setback which in itself 'does not constitute [an] adverse employment action'").

workload" of junior analyst and managerial work (*id.* ¶ 62), and that she had an "extraordinary plate of responsibilities" (*id.* ¶ 64). But plaintiff fails to allege anything about the specific workloads of other similarly-situated employees of a different race, leaving the court to speculate about the manner and degree to which plaintiff's workload differed from that of her similarly situated co-workers.[9] In addition, plaintiff has failed to provide any direct evidence of discriminatory intent with respect to the allocation of work.

In short, none of plaintiff's excessive workload allegations is sufficiently specific to meet the NYSHRL/Title VII pleading standard, nor the NYCHRL standard which requires a plausible showing that the plaintiff was treated "less well" in her work assignments compared to co-workers who were similarly situated in all material respects, giving rise to an inference that she was treated differently *because of* her race.

### III.    Plaintiff Has Not Plausibly Alleged a Denial of Promotion Based on Her Race

Plaintiff's claim that she was denied a promotion based on her race requires plausible allegations that she sought an available position for which she was qualified and was turned down on account of the fact she is African American. *See Staten v. City of New York*, 2015 WL

---

[9]  Plaintiff alleges in paragraph 66 that "two non-Black counterparts (an Asian woman and a Caucasian male)" with the same title of Manager "confirmed that McHale was burdening Ms. Dobney with far more work than was being asked of them." Compl. ¶ 66. This alleged hearsay does not begin to plausibly show that these two unnamed employees were similarly situated in all material respects, so that it could be reasonably inferred that plaintiff's work assignments were excessive in comparison and motivated at least in part by race discrimination. The workload allegation in this case is even less specific than a similar hearsay allegation rejected in *Bautista*, *supra*, where a Hispanic plaintiff who was terminated alleged that his co-worker told him that "the new [w]hite and/or Albanian workers did not work as hard, took more breaks, and showed up late, unlike [Bautista], who was always an excellent worker." 2022 WL 17156628, at *9. The court in that case, applying the NYCHRL standard, stated that "this allegation does not sufficiently allege comparators from which differential treatment can be deduced, nor does it give rise to the inference that Bautista was treated differently *because of* his race." *Id.* (emphasis in original).

4461688, at *11 (S.D.N.Y. July 20, 2015), *aff'd*, 653 F. App'x 78 (2d Cir. 2016).[10]  Satisfying

this requirement entails closely examining the description, location and availability of the

position sought, the candidates for promotion, and the circumstances that could give rise to an

inference that race was a motivating factor for not promoting the plaintiff.  The complaint cites

three different promotion-related events, none of which meets this pleading standard.

### A.    Promotion to Senior Manager

Plaintiff asserts that "[i]n or around September 2021," she told defendant Elizbeth Barrett

that she wanted to be promoted from Manager to "Senior Manager" in recognition of her work.

Compl. ¶¶ 69-71.  Ms. Barrett told plaintiff "that there was no headcount available to promote

*her*, and that in any event, promotions are not granted absent an expansion to an employee's

workload."  *Id.* ¶ 72 (emphasis added).[11]  Plaintiff then alleges that one week later, "the

Company created a new headcount to promote Euris Peña" even though his workload had not

expanded.  *Id.* ¶¶ 75, 79.  Plaintiff does not allege who made the decision to promote Mr. Peña,

what department in the company he worked in,[12] whether there was headcount in that area to

promote him, who his immediate supervisor was, what his qualifications were, what his race is,[13]

---

[10]   The pleading requirements for a promotion claim are materially the same under the NYSHRL standard and the NYCHRL standard.  "Courts have yet to establish a test for analyzing failure to promote claims under the NYCHRL" and have used the Title VII framework as a guide, "while bearing in mind the more liberal standards of the NYCHRL."  *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021).

[11]   This alleged statement is consistent with an alleged statement by plaintiff's supervisor, defendant Richard McHale, approximately two years earlier, that there would not be any upward movement "anytime soon."  Compl. ¶ 34.  Contrary to plaintiff's allegation, there is nothing "openly hostile" about McHale's alleged statement; on its face it merely describes the expectation that promotion opportunities would be limited.

[12]   The complaint only alleges that Mr. Peña was promoted into the same "role" plaintiff had sought, not that it was the same "position" in the same department.  *Id.* ¶ 76.  He could have been promoted to a Senior Manager position in a different department.

[13]   Given that another person who was allegedly promoted is identified as "Caucasian," *id.* ¶ 78, and that Mr. Peña's race is not identified, it is likely that Mr. Peña is "a person of color"—a group plaintiff alleges she is part of and that defendant McHale allegedly targeted in his

9

how many years of work experience he had and at what level, his level of performance for ABC, or what kind of work he even performed for the company.

In the absence of any of those facts, plaintiff's allegations amount to nothing more than a "vague comparator," which courts have held precludes an inference of discrimination because it is not clear that the person who received a promotion is similarly situated to the plaintiff in all material respects except race. *Carmon v. Dance*, 2021 WL 232121, at *4 (E.D.N.C. Jan. 22, 2021) (holding that to give rise to an inference of race discrimination, a plaintiff must show that she and a similarly situated employee, as opposed to a "vague comparator," were not treated equally). In *Staten*, *supra*, for example, the court dismissed plaintiff's promotion discrimination claim stating "Plaintiff offers only his allegations that [the two white employees who were promoted] scored lower [than he did on one of the exams] and had blemished disciplinary records…. Plaintiff fails to provide sufficient factual support regarding his comparators' work performances, disciplinary records, or otherwise to substantiate any meaningful comparison." 2015 WL 4461688, at *11; *see also Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 68-69 (2d Cir. 2015) (affirming dismissal of promotion claim where the plaintiff failed to provide any meaningful specifics about the difference in qualifications or what qualifications were considered for the position).

Because there are insufficient factual allegations from which to conclude that Ms. Dobney and Mr. Peña were similarly situated in all material respects except race, and because Mr. Peña himself is part of a racial minority group to which Ms. Dobney claims she belongs, plaintiff has failed to plausibly allege that she was denied a promotion to Senior Manager on the

---

"campaign of discrimination and retaliation against people of color." *See id*. ¶¶ 31, 50 ("Ms. Dobney highlighted that she and two other women of color . . ."). Promoting a person of color, who is part of a group plaintiff identifies with in this case, does not support the claim that discrimination was a reason for not promoting the plaintiff.

10

basis of her race, even under the more liberal pleading standard of the NYCHRL.[14]

### B.    Promotion to Senior Manager for Digital

"In late 2021," sometime shortly after the events described above, Ms. Dobney went out on maternity leave.[15]  While she was on leave, Mr. McHale allegedly advised her that two Senior Manager roles were open for which she could interview.[16]  She allegedly applied for one of these positions, Senior Manager for Digital, interviewed with Mr. McHale, and was not selected.[17] Plaintiff admits that she "sought clarity" about the decision from Ms. Barrett, who "touted" the experience of Eric Levin, a white male who was selected for the position.  Plaintiff also admits that Ms. Barrett cited plaintiff's own "performance issues" as a reason for not promoting her.[18]

Plaintiff attacks Ms. Barrett's decision on several grounds, all of which fail to support a plausible claim of discrimination.  She alleges without any factual support that Mr. Levin lacked "the requisite experience" for the Senior Manager for Digital position, that Ms. Barrett's endorsement of Mr. Levin's experience was "false," and that her own "performance issues" were a "patently pretextual basis for the denial of this promotion."[19]  However, the complaint does not include any specific factual allegations that undermine the views Ms. Barrett communicated about Mr. Levin's experience or plaintiff's performance shortcomings, such as Mr. Levin's resume or Ms. Dobney's actual performance reviews.[20]  Because plaintiff fails to include the

---

[14]   The brief allegation in Paragraph 78 of the complaint that "around the same time, Leah Auster, a Caucasian woman and another relatively short-term employee, was also promoted in place, to Director," has nearly the same problems as the allegations related to Mr. Peña.  In addition, Ms. Auster was allegedly promoted to Director, not Senior Manager.  Compl. ¶ 78. But, plaintiff does not claim she wanted the Director role or was even qualified for it.

[15]   *Id.* ¶ 82.

[16]   *Id.* ¶ 83.

[17]   *Id.* ¶¶ 86, 87.

[18]   *Id.* ¶ 90.

[19]   *Id.*

[20]   The claim in paragraph 91 of the complaint that "Mr. Levin shared with Ms. Dobney that the Senior Manager for Digital role was quite different from the majority of his experience" casts no

kind of "factual content" *Twombly* requires and instead relies solely on conclusory labels—Ms. Barrett's touting of Mr. Levin's experience "was false" and her reference to plaintiff's performance problems was "patently pretextual"—there is no way plaintiff can plausibly claim she was more qualified for this position and that her race was a determinative factor in selecting Mr. Levin.

Plaintiff clearly disagrees with the explanation Ms. Barrett provided, but that has never been a basis for suggesting that a decision is unlawfully discriminatory, particularly when no specific and relevant factual allegations bolster plaintiff's conjecture.[21]  Moreover, a federal district court does not sit as some kind of super-personnel department second guessing a private company's promotion decisions, and this is particularly the case where, as here, there is not a scintilla of evidence of a racial motive.  *See Moy v. Perez*, 712 F. App'x 38, 42 (2d Cir. 2017) ("Title VII is not an invitation for courts to sit as a super-personnel department that reexamines employers' judgments"); *Tsaganea v. City Univ. of New York, Baruch Coll.*, 441 F. App'x 12, 14 (2d Cir. 2011) ("[T]he court's role is not to second guess [the defendant's hiring decision] absent

---

doubt on Ms. Barrett's apparent view of the quality of Levin's experience overall or its relevance to the job in question.  *Id.* ¶ 91.  Moreover, the allegations that plaintiff hired and trained the team that the new Senior Manager for Digital would oversee and that she had "strong relationships" with the business partners with whom that Senior Manager would work, suggest she had some qualifications for the job but posit nothing about her performance problems even at the lower Manager level of responsibility.  *Id.* ¶ 85.  Nor do these allegations plausibly suggest that plaintiff's race was a motivating factor in the decision as to who the best candidate overall was, because, among other reasons, the complaint does not include any factual allegations about the actual work the Senior Manager for Digital was expected to do, the skills or abilities that were most important in the position, or any qualification standards for the job.

[21]  *See Nguyen v. Dep't of Corr. & Cmty. Servs.*, 169 F. Supp. 3d 375, 390 (S.D.N.Y. 2016) ("Plaintiff may disagree with the determination that [the two comparators] were best suited for the respective positions, but as a matter of law his subjective assessment cannot give rise to an inference of discrimination"); *Concepcion v. City of New York*, 2016 WL 386099, at *14 (S.D.N.Y. Jan. 29, 2016), *aff'd*, 693 F. App'x 31 (2d Cir. 2017) (concluding that the plaintiff's "subjective assessment of her own qualifications [were] insufficient to create a genuine factual issue as to whether the [defendant]'s proffered reasons for its hiring decisions are pretext for discrimination").

some evidence to raise an issue of fact as to a discriminatory motive"). In sum, even bearing in mind a liberal pleading standard, plaintiff has failed to plausibly claim that the decision not to promote her to the Senior Manager for Digital position was based in part on her race.

### C.     Lateral Promotion Opportunity

While plaintiff alleges that Mr. McHale invited her to interview for a "lateral Manager role," she fails to allege whether she was even interested in this position. She also fails to allege any facts about whether that position was filled or if so by whom. Compl. ¶¶ 93-96. Plaintiff simply alleges, upon information and belief, that no other person on Mr. McHale's team had ever been made to interview for any promotional opportunity within the team, and that the selection process for this job was "patently discriminatory and retaliatory." *Id.* ¶¶ 95, 96. The Second Circuit has flatly rejected this kind of attempt to establish discriminatory motive with unsupported attacks on the promotion process. *See Staten*, 2015 WL 4461688, at *11 (granting defendant's motion to dismiss plaintiff's promotion claim because his conclusory statements that the defendant "blacklisted" him and violated his rights were insufficient to support an inference of discriminatory motive); *Reppert v. New York State Dep't of State*, 2020 WL 4346932, at *5 (N.D.N.Y. July 28, 2020) (dismissing plaintiff's promotion claim when he only alleged there was "discrimination in pre-determining promotions," and that the defendant used "differing candidate selection standards to disfavor [the plaintiff's] candidacy," because these allegations were conclusory and "did not provide [even] minimal support for the proposition that his employer was motivated by discriminatory intent").

### IV.     Plaintiff Has Not Met the Requirements for a Retaliation Claim

To state a claim of retaliation under the NYCHRL and NYSHRL, plaintiff must plausibly allege that she complained about an activity prohibited by the anti-discrimination laws and that, as a result, the employer engaged in "conduct that was reasonably likely to deter a person from

13

engaging in such action." *Mihalik*, 715 F.3d at 112.[22]  A plaintiff must plausibly allege *each* of these three requirements:  protected activity, causation, and conduct likely to deter an employee from complaining.  If the complaint fails to satisfy *any* of these requirements, the claim should be dismissed.  Plaintiff's complaint fails to satisfy all of them.

### A.  Plaintiff Fails to Plausibly Allege She Engaged in Protected Activity

In *Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 582 (S.D.N.Y. 2012), the court emphasized that the protected activity required for a retaliation claim under the NYCHRL must be a complaint about "an activity prohibited by law."  The court in that case granted the motion to dismiss because plaintiff did not explain to those "to whom he complained that he was taking umbrage with what he perceived to be *illegal* activity.  Without allegations that he did so, he has failed to meet his burden to sustain his retaliation claim."  *Id.* (emphasis in original).[23]  Here, Ms. Dobney has failed to sufficiently plead that any of her alleged communications were complaints about illegal activity.

For example, plaintiff alleges in paragraph 38 that she "sought assistance from Ms. Barrett, and then from employee relations" in relation to the ordinary workplace grievances of no direct reports, not getting a better office, not being allowed to interview candidates, and yelling. Compl. ¶¶ 30, 36-38.  None of these alleged complaints is about any illegal activity or anything

---

[22]   These three requirements closely align with the Title VII retaliation standard, which requires a complaint about conduct prohibited by law, causation, and a materially adverse action that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 309 (2d Cir. 2017) (internal citations and quotation marks omitted).

[23]   As this court noted in *Moazzaz v. Metlife*, the communication the plaintiff has in opposition to an employment practice must be "sufficiently specific to make it clear that the employee is complaining about conduct" that would constitute a violation of Title VII.  2021 WL 827648, at *14 (S.D.N.Y. Mar. 4, 2021).  Given the similarity between the pleading requirements for retaliation claims under Title VII and the NYCHRL, this decision is probative here.

related to race.[24]  Next, plaintiff alleges that she "made multiple reports to the Company about McHale's mistreatment," but provides no details about the substance of those alleged reports, thereby precluding the inference that she complained about racial discrimination or any other unlawful conduct.  *Id.* ¶ 46.  Plaintiff also alleges that between the summer of 2020 and the spring of 2021, she complained repeatedly to Disney's Human Relations Department "about the unfair manner in which she was treated."  *Id.* ¶ 48.  Again, there are no facts to suggest that the conduct complained of was about race or was otherwise unlawful.  And finally, plaintiff alleges, without providing any details or explanation, that "[i]n March 2020, [she] formalized her complaint with Disney's Employee Relations team."  *Id.* ¶ 49.  But once again, she fails to allege what kind of complaint it was, again leaving the court to speculate that the complaint was race-based.

The only time plaintiff alleges that what she complained about was related to race is in paragraph 59, where she alleges that "by late 2020, in spiteful retribution for her complaints about racial disparities, McHale had doubled [her] responsibilities with no additional staff."  *Id.* ¶ 59.[25]  But plaintiff does not allege what "complaints about racial disparities" refers to or when she made them, because each time plaintiff alleges she actually made a complaint (*see* this section *supra*), she never describes the complaint as being related to "racial disparities" or race at all.  And even if she did, racial disparities without more are not unlawful.[26]

---

[24]  *See* Section II, *supra.*

[25]  Although plaintiff begins her complaint with the allegation that she "reported the Company's race-based discrimination," none of the specific factual allegations that describe Ms. Dobney's actual complaints relate to race or discrimination in any manner.

[26]  Plaintiff may have had in mind her claim in paragraph 31 that "she and two other women of color were the only 'managers' in the Finance Department with token titles," or her allegation in paragraph 45 that by March 2020 she was the only black employee remaining in the Finance Department.  Compl. ¶¶ 31, 45.  But as this Court noted in *Moazzaz* "'lack of diversity alone is not actionable,'" and "anti-discrimination laws do not require employers to maintain diversity programs."  2021 WL 827648, at *13.  Thus, any general or summary references to complaints

**B.    Plaintiff Cannot Plausibly Allege a Causal Connection Because the Challenged Conduct Pre-Dated the Alleged Protected Activity**

If the conduct alleged to be retaliatory commenced before plaintiff engaged in protected activity, there is no basis for concluding it happened because of the complaint.  Here, the only retaliatory conduct allegedly taken against plaintiff is assigning her an increased amount of work.[27]  Thus, in paragraph 59 plaintiff alleges that by late 2020, "in spiteful retribution" for her complaints, "McHale had doubled [her] responsibilities with no additional staff."  *Id.* ¶ 59.  Plaintiff does not allege which complaints she is referring to, but the ones in closest temporal proximity[28] were in March, April or the summer of 2020 (paragraphs 46, 48 and 49).  *Id.* ¶¶ 46, 48, 49.  Before the earliest of these complaints in March of 2020, plaintiff allegedly already had a "burgeoning workload" in 2019 (paragraph 41) due to the alleged lack of a direct report dating back to January 2016 (paragraph 27), proving that the same adverse action claimed to be retaliatory—an excessive workload—had commenced *prior to* the protected activity which allegedly caused the retaliation.  *Id.* ¶¶ 27, 41.

---

about "racial disparities" or "racial inequities," without any supporting facts, do not provide the specificity *Iqbal* requires to plausibly allege that plaintiff complained about illegal conduct related to her race.

[27]   In both this complaint and in the prior complaint that plaintiff voluntarily dismissed before refiling the same day in state court, plaintiff alleged that defendants embarked on a campaign of retaliation against her, but in the prior complaint that "campaign" also included an allegation that defendants refused to promote her "in retaliation for her expression of protected rights."  *Dobney v. The Walt Disney Co.*, Case No. 1:23-cv-02282-JPO (S.D.N.Y.), Doc. 1, Compl. ¶ 66.  In this new complaint, plaintiff deleted the retaliatory promotion claim, leaving an increased workload as the only alleged retaliatory conduct against *her*.  In paragraphs 50-51 of the instant complaint, it is alleged that Mr. McHale attempted to task plaintiff with participating in an act of retaliation against a *different*, unnamed employee by managing performance issues with one of plaintiff's direct reports.  Compl. ¶¶ 50, 51.  That allegation is unrelated to the retaliation claim plaintiff makes on her own behalf.

[28]   Where, as here, there is no direct evidence of retaliatory motive, the internal complaint which allegedly caused the retaliation must be in close temporal proximity to the adverse conduct, in order to create a plausible inference that the complaint was the cause of the adverse conduct.  *See Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 296 (E.D.N.Y. 2010).

16

"It is well established that an employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation under the NYCHRL because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct." *Wilson v. JP Morgan Chase Bank, N.A.*, 2021 WL 918770, at *7 (S.D.N.Y. Mar. 10, 2021) (internal citations and quotation marks omitted).  In *Wilson*, the court granted defendant's motion to dismiss plaintiff's retaliation claim under the NYCHRL when she failed to plausibly allege a connection between the protected activity and her employer's "increasing hostility" because the hostility pre-dated her internal complaint.[29] Because Ms. Dobney allegedly suffered the same ordinary workplace grievances *before* she engaged in the alleged protected activity, any decision to increase her job responsibilities was merely a continuation of the same pattern and not indicative of retaliation.  This is a second and independent reason why plaintiff fails to plausibly allege a claim of retaliation.

###### C.  Plaintiff Fails To Plausibly Allege Defendants Engaged in Conduct That Is Reasonably Likely to Deter a Person from Engaging in Protected Activity

As discussed in Section IV.B., the only retaliatory conduct plaintiff alleges was her increased workload.  This kind of ordinary workplace grievance is not "reasonably likely to deter a person from engaging in action opposing his employer's discrimination," which is a requirement for any retaliation claim under the NYCHRL.  Even stronger allegations were found insufficient under both Title VII and the NYCHRL in *Mucciarone v. Initiative Inc.*, 2020 WL 1821116 (S.D.N.Y. Apr. 10, 2020), where the plaintiff alleged that the following actions were taken in retaliation for her filing an internal complaint:  her boss made unrealistic work demands, sent her a condescending email, was "verbally abusive" during a meeting, and withheld the assistance of team members.  *Id.* at *11.  The court found that these alleged facts were

---

[29]  This holding in *Wilson* was quoted by this Court in *Moazzaz*, 2021 WL 827648, at *14.

insufficient to establish an adverse employment action under Title VII (*id.* at \*12) and went on to consider the test under the NYCHRL—whether "the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* at \*15. The court dismissed plaintiff's retaliation claim under the NYCHRL after finding, for the same reasons discussed in the Title VII analysis, that plaintiff "has failed to adduce facts that would permit a reasonable jury to conclude that she was subjected to any adverse employment action." *Id.* Similarly, the complaint here fails to plausibly allege facts that meet this third requirement for a retaliation claim under the NYCHRL.

Absent a plausible showing of an unlawful purpose, employers are entitled to make ordinary, day-to-day workplace decisions, such as increasing an employee's responsibilities. Plaintiff here uses the labels of "discrimination" and "retaliation" throughout her complaint, but there is no plausible line specifically connecting one or more of her generalized complaints to the conclusory claim that "by late 2020" her assignments had doubled. As such, Ms. Dobney has not made a plausible showing that defendants engaged in conduct that was reasonably likely to deter a person from making an internal complaint about unlawful discrimination. In summary, plaintiff has failed to plead a plausible case of retaliation for three independent reasons, any one of which entitles defendants to dismissal of the claim.

## V.     Plaintiff Has Not Plausibly Alleged a Claim for Disparate Pay

The two principal allegations in this short section of the complaint provide everything the Court needs to know to dismiss plaintiff's disparate pay claim. *First*, paragraph 98 states: "Upon information and belief, the Company paid Ms. Dobney less than her non-Black counterparts starting in 2012, when she first started with the Company and throughout the years that followed." Compl. ¶ 98. No information is provided on who these co-workers were, what their credentials or responsibilities were, what is meant by "counterparts," or what their pay was

18

compared to plaintiff's pay. In *Wilson v. JPMorgan Chase Bank, N.A., supra,* the court dismissed a similar NYCHRL and NYSHRL pay claim alleging that plaintiff "was subjected to race discrimination in light of her less experienced non-African American colleagues receiving higher pay, promotions and other opportunities." 2021 WL 918770, at *6. The court stated that the complaint failed to allege what the responsibilities or credentials of her comparators were, concluding that the plaintiff did not "plead any facts suggesting the basis for believing that any of her non-African-American colleagues received higher pay." *Id.*

*Second,* paragraph 99 states: "Had Ms. Dobney been properly advanced throughout her tenure with the Company, she would have earned higher earning potential, bonuses and other benefits." Compl. ¶ 99. This allegation defeats plaintiff's claim that she was paid less for the work she actually performed, by describing the difference as *potential* pay she might have earned if she had a viable promotion claim, which she does not. *See* Section III, *supra.*

## VI.     Plaintiff Has Not Alleged a Plausible Claim for Constructive Discharge

As discussed previously, the complaint in this case lacks the specificity—for *any* of the claims asserted—to plausibly allege that defendants acted with a racially discriminatory motive. It is therefore not possible for plaintiff to make a plausible showing under the NYSHRL or the NYCHRL that she was constructively discharged, which requires plausible allegations that defendants acted with a racial motive[30] and "deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign." *Tulino v. City of New York*, 813 F. App'x 725, 727 n.2 (2d Cir. 2020) (citing *Crookendale v. New*

---

[30]     *See, e.g., Charles v. City of New York*, 2023 WL 2752123, at *11 (S.D.N.Y. Mar. 31, 2023) (dismissing plaintiff's constructive discharge claims under the NYSHRL and NYCHRL because he "failed to allege any discriminatory motive on the part of Defendants"); *Pollock v. Shea*, 568 F. Supp. 3d 500, 513 (S.D.N.Y. 2021) ("The NYCHRL similarly makes it unlawful '[f]or an employer or an employee or agent thereof, because of the . . . [race] . . . of any person . . . to discharge from employment such person'").

*York City Health & Hosps. Corp.*, 107 N.Y.S.3d 282, 283 (2019) after noting that "the New York appellate courts have not yet conducted the proper liberal construction inquiry to determine the constructive discharge standard under the NYCHRL").  Plaintiff's constructive discharge claim, which is set forth in paragraphs 102-105, fails because she does not plausibly allege a racial motive and the "intolerable conditions" she claims forced her to leave are based on the false *assumption* that her disparate treatment, pay, promotion and retaliation claims are all meritorious.  Compl. ¶¶ 102-105.  As demonstrated above, that is not the case.

**VII.    Plaintiff Has Not Plausibly Alleged a Claim of Aiding and Abetting**

In her Third and Sixth Causes of Action in this case, plaintiff alleges that defendants Ms. Barrett and Mr. McHale engaged in aiding and abetting in violation of the NYSHRL and the NYCHRL.  There are two problems with these claims.  First, in both of these Causes of Action, it is also alleged that "Defendants Barrett and McHale willfully engaged in discriminatory practices with malice and/or reckless indifference to Dobney's rights."  Compl. ¶¶ 162, 178.  The courts have clearly held that an "individual cannot aid and abet their own discriminatory conduct."  *United States v. New York City Dep't of Educ.*, 407 F. Supp. 3d 365, 402 (S.D.N.Y. 2018); *see also Bautista*, 2022 WL 17156628, at *10.  Thus, because the two individual defendants are the same persons who allegedly carried out the discrimination and retaliation, they cannot be liable for aiding and abetting those practices.

Second, a prerequisite for an aiding and abetting claim, under both the NYSHRL and the NYCHRL, is that the plaintiff "state a claim for race discrimination" or retaliation.  *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 337-38 (S.D.N.Y. 2020).  Accordingly, because the discrimination and retaliation claims should be dismissed, *see* Sections II-VI *supra*, there is no predicate for aiding and abetting liability, and those claims should also be dismissed.

20

*Id.*; *see also New York City Dep't of Educ.*, 407 F. Supp. 3d at 401-02; *Bautista*, 2022 WL 17156628, at *10.

## VIII.   Plaintiff Has Not Alleged a Plausible Claim of Supervisor Liability

Plaintiff's Seventh Cause of Action alleges a claim under the NYCHRL that the corporate defendants are vicariously liable for the actions of the individual defendants.  As to defendant ABC, the statute plaintiff relies on, N.Y.C. Admin. Code § 8-107(13), provides for employer liability only under certain conditions, the first of which is there is "an unlawful discriminatory practice based upon the conduct of an employee or agent."  Therefore, like the aiding and abetting claim, this claim fails because there is no underlying "unlawful discriminatory practice" committed by defendants Ms. Barrett or Mr. McHale.

As to defendant The Walt Disney Company, plaintiff only alleges in paragraph 182 of the Seventh Cause of Action that the corporate defendants "are vicariously liable for *Defendant Barrett's and McHale's* discriminatory, retaliatory and unlawful acts against Ms. Dobney." Compl. ¶ 182 (emphasis added).  Because the supervisor liability statute starts out with the language "[a]n *employer* shall be liable for . . ." (emphasis added), and because Disney did not employ either Ms. Barrett or Mr. McHale,[31] Disney cannot be liable under the supervisor liability theory for the alleged conduct of two non-employees.  *See Hristova v. 3321 Astoria Inc.*, 2018 WL 4006880, at *11 (E.D.N.Y. June 27, 2018) ("[N.Y.C. Admin. Code § 8-107(13)] allows individuals to sue the employers of employees who violate the NYCHRL").

## IX.   Plaintiff Has Not Plausibly Alleged That ABC and Disney Are a Single Employer

The "single employer" doctrine is one of two "recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not

---

[31]   *See* Section IX *infra* which addresses plaintiff's single employer theory regarding Disney.

formally his or her employer."  *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005).[32]  In applying this doctrine, the essential question is whether the separate, related entity made the final employment decisions involving the person claiming discrimination. *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 227 (2d Cir. 2014).  Plaintiff alleges that "The Corporate Defendants Are a Single Employer" (Compl. p. 11) and that Disney is therefore jointly responsible with ABC for the challenged actions in this case.  "This Circuit uses four factors in order to assess whether two nominally distinct entities are actually a single employer: '(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.' 'Although no one factor is determinative[,] *control of labor relations is the central concern.*'" *Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015) (emphasis added) (internal citations omitted).  Applying this test to the allegations in this case, it is clear that Disney and ABC do not represent a single enterprise.

> *1. Centralized control of labor relations.*  "In determining whether a plaintiff adequately alleges centralized control over labor relations—the most important prong in the four-part test—the central question is *what entity made the final decisions regarding employment matters related to the person claiming discrimination.*" *Brown*, 756 F.3d at 227 (emphasis added).  Here, plaintiff does *not* allege that Disney made the final decisions to hire her, to determine her pay, to assign work to her, to select her supervisor, to not promote her, to allegedly retaliate against her, or to allegedly constructively discharge her.  In addition, the alleged conduct underlying

---

[32]   This doctrine has consistently been applied by district courts in this Circuit to the NYSHRL and the NYCHRL.  *See, e.g., Rahman v. Limani 51, LLC*, 2022 WL 3927814, at *5, *6 (S.D.N.Y. Aug. 31, 2022).

plaintiff's claims of disparate treatment (*see* Section II *supra*) involved the two individual

defendants, who are both employees of ABC.[33]

In *Weiss v. Starr Rest. Org., LP*, 2021 WL 3099895, *5 (S.D.N.Y. July 21, 2021), the

plaintiff alleged that his employer and its parent company were a single employer because there

was a single human relations department and the parent exercised vast control over the policies

and practices of its subsidiaries.  The court held this was insufficient to establish centralized

control of labor relations and dismissed the parent company because "[a] common benefits

package speaks only to economies of scale and not to centralized control of labor relations and

the fact that a subsidiary adopted policies promulgated by its parent is insufficient to show that

the parent exercised centralized control over the subsidiary's employees." *Id.* at *6 (internal

citations and quotation marks omitted).  *Weiss* also stated "it is not uncommon for two or more

businesses that are run independently and manage their labor relations independently to use a

single website or a common name for marketing purposes . . . Such evidence may establish that

two or more businesses share a common purpose, but it does not, without more, establish an

interrelation of operations or centralized control of labor relations." *Id.* at *5 (internal citations

and quotation marks omitted); s*ee also Musiello v. CBS Corp*., 518 F. Supp. 3d 782, 791-92

(S.D.N.Y. 2021).  This case law clearly shows that the common features that exist between

Disney and ABC are insufficient to establish centralized control of labor relations.

*2. Interrelations of operations.*  Plaintiff alleges facts that are typical of a parent-

subsidiary relationship but do not indicate "any interrelationship that is relevant to control over

---

[33]   The only conduct plaintiff attributes to Disney employees is the alleged failure to properly investigate her vaguely defined "concerns" and complaints about defendants Mr. McHale and Ms. Barrett, but plaintiff has not plausibly alleged that any unlawful discrimination occurred in the first place, or that she even complained about any illegal activity.  Thus, there is no plausible basis for claiming that Disney failed to properly investigate plaintiff's concerns.

23

conditions of employment at [the subsidiary]." *Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 252-53 (S.D.N.Y. 2007), *amended* (Aug. 16, 2007).  In *Velez*, plaintiff alleged that the two companies shared the same office space, phone directory, and IT services, and that the parent kept custody of the subsidiary's record books, provided capital funding, and had the power to approve or disapprove the subsidiary's budget, but the court held that those claims only "establishe[d] that the parent company is keeping track of the operations of its subsidiary," not that it had control over conditions of employment.  *Id.*

   *3. and 4.  Common management and common ownership.*  These two factors, "the last prongs of the single employer test, are less important as they represent ordinary aspects of the parent-subsidiary relationship.  Thus, the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer." *Id.* at 253-54 (internal citations and quotation marks omitted).  Ms. Dobney alleges that Disney and ABC share a board of directors and that her supervisors reported directly to a Disney entity, but the plaintiff made the same arguments in *Fenner v. News Corp.*, 2013 WL 6244156, at *11 (S.D.N.Y. Dec. 2, 2013), which the court found insufficient because "executives' dual roles, without more, do not demonstrate that [the parent] exercised control over Plaintiff's employment."  The same is true here, and applying all the factors to the allegations beginning at paragraph 106, plaintiff has failed to plausibly allege that Disney and ABC constitute a single integrated enterprise.  Compl. ¶ 106.

*  *  *

24

## **CONCLUSION**

For all the foregoing reasons, the Court should dismiss all claims in this action *with prejudice* since Ms. Dobney has failed in her second version of this complaint to cure any of the deficiencies outlined in detail in defendants' motion to dismiss her first filed complaint.

Dated:    August 25, 2023                                    Respectfully Submitted,
          New York, New York

                                                            McDERMOTT WILL & EMERY LLP

                                                            By:  */s/ Kerry Alan Scanlon*
                                                                 Kerry Alan Scanlon
                                                                 500 North Capitol Street, N.W.
                                                                 Washington, D.C. 20001
                                                                 Telephone:   (202) 756-8696
                                                                 Facsimile:    (202) 591-2791
                                                                 kscanlon@mwe.com

                                                                 Stephania C. Sanon
                                                                 One Vanderbilt Avenue
                                                                 New York, NY 10017-3852
                                                                 Telephone:   (212) 547-5400
                                                                 Facsimile:    (212) 547-5444
                                                                 ssanon@mwe.com

                                                                 *Attorneys for Defendants*

25