UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VENESSA DOBNEY,

                      Plaintiff,

        - against -

THE WALT DISNEY COMPANY, *et al*.,

                    Defendants.

Case No.: 1:23-cv-05380-JPO

## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS**

**KALMANSON COHEN, PLLC**
Randi M. Cohen
Marla Tepper
Kimberly Kalmanson
One Liberty Plaza
165 Broadway, 23rd Floor
New York, New York 10006
T: (646) 759-3655
E: randi@kalmansoncohen.com
*Attorneys for Plaintiff Venessa Dobney*

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT............................................................................................ 1

PLAINTIFF'S ALLEGATIONS ......................................................................................... 2

STANDARD OF REVIEW ................................................................................................. 5

ARGUMENT ...................................................................................................................... 6

    I.     PLAINTIFF SUFFICIENTLY ALLEGES DISCRIMINATION........................................ 6

        A.   Pleading Standards for New York State and City Discrimination Claims ....................... 6

        B.   Plaintiff Sufficiently Pleads Discrimination under the NYSHRL and NYCHRL............ 7

    II.    PLAINTIFF SUFFICIENTLY ALLEGES RETALIATION............................................. 13

        A.   Plaintiff Engaged in Protected Activities ........................................................... 13

        B.   A Causal Connection Exists Between the Protected Activities and Adverse Acts......... 14

        C.   Defendants Engaged in Conduct that Would Reasonably Deter a Person From Engaging in a Protected Activity ................................................................................... 16

    III.   PLAINTIFF WAS CONSTRUCTIVELY DISCHARGED ........................................... 17

    IV.   DISNEY AND ABC WERE BOTH PLAINTIFF'S EMPLOYER............................... 18

        A.   Interrelation of Operations ............................................................................... 18

        B.   Centralized Control of Labor Relations ............................................................. 19

        C.   Common Management, Common Ownership, and Common Financial Control........... 20

        D.   Judicial Notice of Court Proceedings................................................................ 21

V.    PLAINTIFF ADEQUATELY ALLEGES THAT MCHALE AND BARRETT AIDED

AND ABETTED VIOLATIONS OF THE NYSHRL AND NYCHRL............................ 22

VI.    PLAINTIFF ADEQUATELY ALLEGES SUPERVISORY LIABILITY ...................... 23

CONCLUSION............................................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................. 6

*Batista v. Degennaro*
        No. 13 Civ. 1099(DAB), 2014 WL 1046735, *7 (S.D.N.Y. Mar. 10, 2014)  17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)............................................. 6

*Bonterre v. City of New York*, 18 Civ. 745 (ER), 2021 WL 4060358 (S.D.N.Y. Sept. 7, 2021) ... 22

*Brophy v. Chao*, 17-CV-9527 (CS), 2019 WL 498251, *12-13 (S.D.N.Y. Feb. 7, 2019)............. 12

*Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)........................................... 18

*Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 532 (S.D.N.Y. 2011)...................... 12

*Chau v. Donovan*, 357 F. Supp. 3d 276, 286 (S.D.N.Y. 2019)..................................................... 22

*Cid v. ASA Inst. Of Bus. & Computer Tech., Inc.*
        No. 12-CV-2947 (DLI)(VMS), 2013 WL 1193056 (E.D.N.Y. Mar. 22, 2013)        22

*Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) .................................................. 6

*Colbert v. FSA Store, Inc.*, 19-cv-9828 (LJL), 2020 WL 1989404 (S.D.N.Y. Apr. 27, 2020) ........ 8

*Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995) .................................... 18

*Emanuel v. GAP, Inc.*, No. 19-CV-03617 (PMH), 2023 WL 5211007 (S.D.N.Y. Aug. 14, 2023) 23

*Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 582 (S.D.N.Y. 2012) ................ 14

*Feingold v. New York*, 366 F.3d 138, 152-53 (2d Cir. 2004) .......................................................... 9

*Gordon v. City of N.Y.*, No. 14-CV-6115 (JPO) 2015 WL 3473500 (S.D.N.Y. June 2, 2015) ...... 11

*Guity v. Uniondale Union Free Sch. Dist.*
    No. CV 15-5693 (SJF) (AKT), 2017 WL 9485647 (E.D.N.Y. Feb. 23, 2017) ................ 10

*Guzman v. United States*
    No. 11 Civ. 5834 (JPO), 2013 WL 543343 at *3 (S.D.N.Y. Feb. 14, 2013) ..................... 21

*Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) ................................................. 6

*Knight v. MTA N.Y. City Transit Auth.*
    No. 19 CV 1428 (PKC)(LB), 2021 WL 10424509 (E.D.N.Y. Sept. 28, 2021) ................ 17

*Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ...................................................... 13

*Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015) .......................................................... 7

*Matthew v. Tex. Comptroller of Pub. Accounts*
    No. 21 Civ. 5337 (JPC), 2022 WL 4626511 (S.D.N.Y. Sept. 30, 2022) ........................... 6

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) ................. 7

*Murray v. UPS*, No. 20-CV-1427 (MKB), 2022 WL 4468295 (E.D.N.Y. Sept. 25, 2022) .......... 12

*Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016) ............................. 13

*Parker v. Columbia Pictures Indus.* ................................................................................................. 19

*Quintero v. Angels of the World*
    No. 19-CV-6126 (DG), 2021 WL 4464123 (E.D.N.Y. Sept.10, 2021) ............................. 25

*Rasmussen v. The Walt Disney Company, et al.*
    Case No. 19STCV10974 (LA Sup. Ct. Apr. 2, 2019) ...................................................... 21

*Sanderson v. Leg Apparel LLC*
    No. 1:19-cv-08423-GHW, 2020 WL 3100256 (S.D.N.Y. June 11, 2020) ......................... 9

*Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 296 (S.D.N.Y. 2016)............ 13

*Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011)............................................ 17

*United States v. New York City Dep't of Educ.*
    407 F. Supp. 3d 365 (S.D.N.Y. 2018) (Defs.' Mem. at 20)................................................. 23

*Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 51 (S.D.N.Y. 2009) ................................... 13

*Wolf v. Time Warner, Inc.*, 548 F. App'x 693, 696 (2d Cir. 2013) ................................................. 7

**Statutes**

N.Y. Exec. L. § 296(6) ..................................................................................................................... 22

N.Y. Exec. L. § 300 ........................................................................................................................... 6

N.Y. Exec. Law § 296(1)(a) .............................................................................................................. 6

N.Y.C. Admin. Code § 8-107(1)(a)(3) .............................................................................................. 6

NYCHRL § 8-107[13][b] ................................................................................................................. 23

Plaintiff Venessa Dobney ("Plaintiff" or "Dobney"), by her attorneys, Kalmanson Cohen PLLC, respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss filed by Defendants The Walt Disney Company ("Disney"), American Broadcasting Companies, Inc. ("ABC"), Elizabeth Barrett ("Barrett"), and Richard McHale ("McHale").[1]

### PRELIMINARY STATEMENT

During her ten years with Disney and ABC, Dobney, a Black woman, experienced ongoing racial discrimination and retaliation. An excellent employee, Dobney was given a token Managerial title with no direct reports; treated less favorably than her non-Black colleagues; punished with a brutal workload far exceeding those of her non-Black counterparts after she made protected complaints; denied promotions for which she was qualified on patently pretextual grounds; and subjected to application and interview processes different from her non-Black counterparts. Defendants responded to Plaintiff's repeated complaints about racial discrimination and inequities with lip service, inaction, and delay.

Plaintiff sufficiently alleges that Defendants engaged in discrimination and retaliation under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). Defendants ignore the liberal pleading standards applicable to these statutes, and trivialize the facts in the Complaint that give rise to an inference of discrimination. Because Plaintiff adequately pleads violations of the NYSHRL and NYCHRL, Defendants' position that both the aiding and abetting and vicarious liability claims should be dismissed for failure to so state also fails. Plaintiff also adequately alleges constructive discharge: the adverse actions Dobney suffered, created intentionally by Defendants, would make any reasonable person in her shoes resign. Moreover, Defendants' argument that Barrett and McHale cannot be

---

[1] Defendants Disney and ABC are collectively referred to as the "Company." All the Defendants are collectively referred to as "Defendants." Defendants' Memorandum of Law in Support of their Motion to Dismiss is referred to as "Defs.' Mem. at ___." Plaintiff's Complaint is referred to as "Compl."

1

held liable for aiding and abetting because they are allegedly responsible for the underlying illegal and discriminatory conduct is contradicted by law. Lastly, Defendants' argument that liability cannot be imputed to Disney is wrong, because Disney and ABC are a single integrated enterprise. Disney cannot evade legal liability as an employer.[2]  Accordingly, the Court must deny Defendants' Motion to Dismiss.[3]

<u>**PLAINTIFF'S ALLEGATIONS**</u>

Dobney joined Defendants in 2012 as a Senior Financial Analyst supporting ABC News. Excited about an opportunity that promised growth, Defendants repeatedly thwarted those prospects with their discriminatory and retaliatory conduct. Compl. ¶¶ 22-25.

In 2016, the Company "promoted" Dobney to "Manager" yet assigned her no direct reports, offering thin excuses for giving her a title with no supervisory responsibilities when she complained. *Id.* ¶¶ 27-29. As would become pattern, the Company failed to address her complaint. *Id.* ¶¶ 30-31. With no direct reports, Dobney complained again in 2018 to Barrett, underscoring that she and two other women of color were the sole managers in the Finance Department with token titles. *Id.* Though Barrett acknowledged the disparity, the need to address it, and committed to doing so, her words were hollow. *Id.* ¶ 32.[4]

In 2019, the Company reorganized the Finance Department and assigned Dobney to McHale's team. *Id.* ¶ 33. McHale was openly hostile to Dobney from the get-go. *Id.* ¶ 34. In an introductory meeting, he foreclosed the possibility of advancement. *Id.* As detailed in the

---

[2] Inexplicably, Defendants move to dismiss a disparate pay claim. Plaintiff <u>*does not*</u> assert this claim, but, rather, identifies her discovery of pay inequity as <u>*one reason*</u> for her constructive discharge, and evidence of discrimination.
[3] Defendants urge the Court to deny Plaintiff "another opportunity" to amend the Complaint. Defs.' Mem. at 1. Plaintiff has not yet amended her Complaint. Plaintiff voluntarily dismissed *Dobney v. Disney*, 23-CV-02282 (JPO), and the Court ordered that case closed without prejudice. Plaintiff filed the instant Complaint in New York Supreme Court alleging solely state law claims. Defendants removed the action to this Court based on diversity jurisdiction.
[4] Plaintiff was not assigned a direct report until three years later in 2019 and then, the report had an existing portfolio of work outside of Plaintiff's workflow. *Id.* ¶ 41.

Complaint, McHale treated Dobney less favorably from her non-Black counterparts, and this differential and discriminatory conduct continued unabated throughout her tenure. *Id.* ¶¶ 47-96.[5]

Dobney's repeated complaints of racial discrimination fell on deaf ears. She complained to Barrett and then to Disney's Employee Relations team ("ER") in 2019. *Id.* ¶ 40. Barrett ignored Dobney's complaints, as well as the exodus of the only other Black employees on McHale's team. Barrett tacitly endorsed McHale's discriminatory conduct, empowering him to escalate his campaign against Dobney with impunity. *Id.* ¶¶ 39-40, 45, 47-96. Between the summer of 2020 and the spring of 2021, Dobney repeatedly complained to Disney's Human Resources Department ("HR") about the unfair manner in which she was being treated on the basis of her race, formalizing her complaint with ER in March 2020. *Id.* ¶¶ 48-49.

Though Dobney's complaints elicited an empty apology from McHale in April 2020, he then doubled down on his discriminatory and retaliatory conduct. *Id.* ¶¶ 47-96. Showing his cards, McHale instructed Dobney to manufacture performance deficiencies about her direct employee, a woman of color, whom Dobney did not believe had performance issues. *Id.* ¶¶ 50, 51. McHale's unsupported instruction was blatantly retaliatory—coming on the heels of *that* employee's complaint to HR about unfair treatment and favoritism. *Id.* McHale also directed Dobney to attend an unprecedented meeting with a Senior Manager of Financial Planning in July 2020 to review her job responsibilities, though she had held the same job for four years and had no performance issues. *Id.* ¶¶ 52-53. McHale did not summon Dobney's non-Black counterparts—all more junior—to attend any such meeting. Dobney again expressed discomfort with being treated differently from her non-Black counterparts. *Id.* ¶ 53-54.

---

[5] As examples, McHale did not give Dobney an office commensurate with her title or with those of her non-Black counterparts; he verbally abused her; he yelled and cursed at her, and belittled her; he criticized her work, though it was excellent; he did not give her the same responsibilities as non-Black counterparts, excluding her from interviewing candidates for the team; and he excoriated her for work that another manager had already approved. *Id.* ¶¶ 35-37, 45.

The Company validated Dobney's complaints in August 2020. *Id.* ¶ 55. Describing Dobney as "lucky," Disney's ER Manager claimed that McHale's Department wanted to "learn to do better" and that leadership would be sent to management training to rectify the situation. *Id.* ¶ 56. That didn't happen. Instead, McHale *doubled* Dobney's responsibilities with no additional staff. *Id.* ¶¶ 56, 59, 62. Two non-Black counterparts on Dobney's team with the same title of "Manager" confirmed that McHale was burdening her with far more work than he was asking of them; *and* they had support to whom to delegate junior level tasks. *Id.* ¶¶ 63, 65-66.

Dobney again brought her complaints to HR armed with documentation of the disparate workloads, which she, in good faith, believed to be retaliatory as a result of her protected complaints of discrimination. *Id.* ¶ 67. McHale upbraided her for the complaint, threatening her to keep silent if she wanted to be promoted. *Id.* ¶ 68. Dobney did not yield; instead, she complained to Barrett about McHale's retaliation and asked to be promoted to a Senior Manager in recognition of her hard work. *Id.* ¶¶ 69-71. True to form, Barrett took no action, immediately denying Dobney a promotion, claiming there was no headcount for promotions and that promotions could not be given without expansions in the workload. *Id.* ¶¶ 71.[6]

This, too, was false. Just weeks later, the Company promoted Euris Peña, a short-term employee, to the very position that Dobney sought. *Id.* ¶¶ 75-77. Dobney was not even advised of the unadvertised position or invited to interview for it, in contrast to Mr. Peña and one other non-Black employee. *Id.* ¶ 77. And, within the same time frame, Leah Auster, a Caucasian woman was promoted in place. *Id.* ¶ 78. These employees did not have expansions to their workloads, nor tenure justifying promotions. *Id.* ¶¶ 77-79. Rather, as distinct from Dobney,

---

[6] Barrett's excuse of course ignored that Dobney had, in fact, a marked expansion to her workload.

neither is Black and neither had voiced protected concerns about the Company's racial inequities. *Id.* ¶ 80.

Premature labor caused Plaintiff to take maternity leave in late 2021. *Id*. ¶ 82. While on leave, McHale "invited" Plaintiff to apply for the role of Senior Manager of Digital, a position for which she was the obvious candidate given her experience. Dobney had even trained the staff that would report to the role. *Id*. ¶¶ 83-85. She did not get the job. *Id*. ¶¶ 86-87. Instead, the job went to Eric Levin, a Caucasian male who admitted that he lacked the relevant experience. *Id.* ¶¶ 87, 89, 91. Barrett again proffered pre-textual reasons for the Company denying Dobney the role, claiming for the first time, that Plaintiff had performance issues—a claim contradicted by her excellent performance reviews. *Id.* ¶¶ 90, 92. McHale then offered her an "opportunity" to apply for a lateral role that would report to Levin. *Id*. ¶¶ 90, 92. No other team member had previously been subjected to an interview process for positions within the team. *Id*. ¶ 94.

In May 2022, Plaintiff again spoke with a Disney HR Manager and a Disney ER employee about the discrimination she faced. Dobney was told there were no records related to her complaints and that the investigation would have to begin anew. Four months later, the investigation still had not been completed. *Id.* ¶¶ 131-34. Plaintiff was constructively discharged in September 2022, on the heels of being turned down for the Senior Manager position, returning to work with no advancement in sight, learning that she was being paid less than her non-Black colleagues, and being forced to perform the role of the Senior Manager position that the Company had denied her while the inexperienced Mr. Levin learned the job. *Id.* ¶¶ 101-105.

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor

of the plaintiff." *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citations omitted). The complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A reviewing court must "draw on its judicial experience and common sense" to determine plausibility. *Id.*, 556 U.S. at 679 (citation omitted). The Second Circuit has held that "to survive a motion [to dismiss] . . . a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).

**ARGUMENT**

I.   **PLAINTIFF SUFFICIENTLY ALLEGES DISCRIMINATION**

   A.   **Pleading Standards for New York State and City Discrimination Claims**

The NYSHRL and NYCHRL prohibit discrimination in the terms and conditions of employment based on race and other protected categories. N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a)(3). In August 2019, the NYSHRL was amended, directing courts to construe the NYSHRL, like the NYCHRL, *i.e.*, "liberally for the accomplishment of the remedial purposes thereof." *See* N.Y. Exec. L. § 300. The amendment made the standard for sustaining claims under the NYSHRL "closer to the standard" under the NYCHRL and applies to claims that accrue on or after August 12, 2019. *See Matthew v. Tex. Comptroller of Pub. Accounts,* No. 21 Civ. 5337 (JPC), 2022 WL 4626511 (S.D.N.Y. Sept. 30, 2022)[7]

---

[7] Defendants incorrectly state that the amendment requiring liberal construction of the NYSHRL became effective on October 11, 2019. Defs.' Mem. at 1, n.3. The 2019 NYSHRL amendments have different effective dates – the liberal construction of the NYSHRL became effective on August 12, 2019, while other amendments became effective on October 11, 2019. *See McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020).

Under the NYCHRL's liberal standard, a plaintiff must allege only that "she [was] treated 'less well' ... because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (citation omitted). "[T]he challenged conduct need not even be 'tangible' (like hiring or firing)." *Id.*; *see also Wolf v. Time Warner, Inc.*, 548 F. App'x 693, 696 (2d Cir. 2013) ("To state a claim for discrimination, a plaintiff must only show differential treatment of *any* degree based on a discriminatory motive.") (emphasis added).

Here, most of Plaintiff's claims post-date August 12, 2019. For NYSHRL claims accruing before that date, a plaintiff does not need substantial evidence of discriminatory intent at the initial stages of litigation. Rather, it is enough to show that she is a member of a protected class; she was qualified for the position she sought; she suffered an adverse employment action; and that "[she] can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation[.]" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). A plaintiff does not need to support to the "ultimate question" of whether an adverse employment action was attributable to discrimination, but only needs to show "minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* A plaintiff may also support an inference of discrimination by showing "*the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.*" *Id.* at 312 (citation omitted) (emphasis added).[8] Applying these standards, Defendants' motion fails.

**B. Plaintiff Sufficiently Pleads Discrimination under the NYSHRL and NYCHRL**

Despite Plaintiff's light burden to establish mere plausibility, Defendants frivolously argue that Plaintiff fails to allege any facts giving rise to an actionable claim under the NYSHRL and NYCHRL. Plaintiff has easily met the NYSHRL's pre-amendment "minimal burden" of

---

[8] Notably, the case Defendants cite to support the pleading standard for NYSHRL/Title VII discrimination claims, *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 117 (S.D.N.Y. 2022), outlines the standard for *retaliation*, not discrimination.  *See* Defs.' Mem. at 3.

showing that she suffered adverse employment actions due to Defendants' discrimination, and *a fortiori*, the more liberal standard for NYCHRL and post-August 2019 NYSHRL claims. The Complaint contains detailed allegations of adverse actions suffered by Plaintiff, including burdens to which her non-Black counterparts were not subject, disproportionate workload, denial of promotion, and unequal pay. Each of these adverse actions, at a minimum, reveal inferences of discrimination and constitute viable claims under the NYSHRL and NYCHRL.

A plausible inference of discrimination arises from a protected employee being subject to employment burdens to which those outside the protected class are not. *Colbert v. FSA Store, Inc.*, 19-cv-9828 (LJL), 2020 WL 1989404 (S.D.N.Y. Apr. 27, 2020). In *Colbert*, the African American plaintiff claimed race discrimination under Title VII, NYSHRL, and NYCHRL, in part, because he was subject to employment burdens to which non-African American employees were not subject, such as being singled out to provide written justification for his annual bonus. 2020 WL 1989404. The Court held that plaintiff's state and city race discrimination claims were viable because, *inter alia*, the disproportionate employment burden constituted an adverse action that arose due to a plausible inference of defendants' discrimination. *See id*.

Here, Dobney pled the same—*i.e.*, that Defendants subjected her to disproportionate burdens not required of her non-Black counterparts. Specifically, Plaintiff alleges that McHale insultingly and pretextually offered Plaintiff an *interview* for a lateral role. *Id*. ¶ 93. McHale had never forced any other person reporting to him to interview for a lateral role. *Id*. ¶ 94. As another example, in July 2020, with no explanation, McHale directed Dobney to attend an unprecedented meeting with a Senior Manager of Financial Planning to review Dobney's job description. Compl. ¶¶ 52-53. McHale did not summon Dobney's non-Black colleagues—all more junior in

their positions—to attend any such meeting. *Id.* ¶ 54. Dobney expressed discomfort with being treated differently from her non-Black counterparts. *Id.* [9]

Accordingly, Plaintiff meets even the pre-amendment NYSHRL pleading standard (which is inapplicable because these actions occurred after August 2019) by alleging that Defendants subjected her to which they did not subject her non-Black colleagues, adequately demonstrating Defendants' discriminatory intent at this early stage. *See, e.g.*, ¶¶ 54, 94.

The Complaint further details Defendants' actionable discrimination, alleging that Defendants assigned Plaintiff a workload disproportionate to her non-Black colleagues, much like the Black plaintiff in *Sanderson v. Leg Apparel LLC*, No. 1:19-cv-08423-GHW, 2020 WL 3100256 (S.D.N.Y. June 11, 2020). There, the Court held that the plaintiff's workload relative to his white colleagues constituted an adverse employment action that arose due to defendants' discrimination. *Sanderson*, 2020 WL 3100256. Following the Second Circuit's decision in *Feingold v. New York*, 366 F.3d 138, 152-53 (2d Cir. 2004), the court explained that <u>*allegations of a disproportionate workload*</u> can qualify as an adverse employment action sufficient to allege discrimination. *Id*.

Defendants conveniently ignore that Dobney alleges a <u>*disproportionate*</u> workload, not simply an "excessive workload." *See* Defs.' Mem. at 7-8. In fact, the Complaint states that in late 2020, McHale doubled Dobney's workload, and continued increasing her workload, <u>*while she was pregnant*</u>, without providing additional staff, and that he did not do the same to Dobney's non-Black counterparts who also had additional support. *See* Compl. ¶¶ 59-61, 63. More, Plaintiff alleges that two non-Black Manager counterparts on her team confirmed that McHale

---

[9] Defendants perplexingly note that Plaintiff "fails to allege whether she was even interested in [the] position. She also fails to allege any facts about whether that position was filled or if so by whom." Defs.' Mem. at 13. These facts are irrelevant; the critical issue is that none of her colleagues had to <u>*interview*</u> for lateral promotions. *See* Compl. ¶ 95.

was burdening her with far more work than he was asking of them, and that they had direct reports to whom to delegate junior level tasks. *Id.* ¶ 66. Further, the Complaint states that that the Company itself acknowledged Plaintiff's burden in late 2020, and that Plaintiff presented the Company with documentation of this growing disparity in 2021, reinforcing the adequacy of the pleadings at this early stage. *Id.* ¶¶ 61, 67. Accordingly, the allegations that the Company burdened Dobney with a disproportionate workload support an inference of Defendants' discrimination sufficient to satisfy the NYSHRL and NYCHRL pleading standards.

Defendants attempt to support their excessive workload argument with cases that are distinguishable and irrelevant. *See* Defs.' Mem. at 7 n.8, 8 n.9.[10] In *Guity v. Uniondale Union Free Sch. Dist.*, No. CV 15-5693 (SJF) (AKT), 2017 WL 9485647 (E.D.N.Y. Feb. 23, 2017), plaintiff could not sustain an excessive workload claim because the workloads were barely disparate, namely, the employer required the plaintiff to teach six classes while similarly situated colleagues were given a *choice* to teach a sixth class. *See id.* That's a far cry from what is alleged here—*i.e.*, that Dobney was told by two similarly situated non-Black colleagues, who had the <u>same title</u> that her workload was far more substantial than theirs. *See* Compl. ¶ 66.

Defendants <u>also</u> quarrel with Plaintiff's allegation of discrimination under the NYCHRL and NYSHRL as a result of Defendants' failure to promote her. To plausibly allege failure to promote, a plaintiff must show: (1) that she is a member of a protected class; (2) that she applied for a promotion to a position for which she was qualified; (3) that she was rejected for the position; and (4) after this rejection, the position was filled by someone outside the protected class who was similarly or less well qualified, or the employer kept the position open. *Gordon v.*

---

[10] The facts of both *Ramirez v. Temin & Company, Inc.*, No. 20 Civ. 6258 (ER), 2021 WL 4392303 (S.D.N.Y. Sept. 24, 2021) and *Bautista v. PR Gramercy Square Condo.*, No. 21-cv-11093 (ER), 2022 WL 17156628 (S.D.N.Y. Nov. 22, 2022) are wholly distinguishable. In neither case did the plaintiff allege facts constituting excessive or disproportionate workload, and accordingly, the respective courts never analyzed those facts. *See Ramirez*, 2021 WL 4392303 and *Bautista*, 2022 WL 17156628.

*City of N.Y.*, No. 14-CV-6115 (JPO) 2015 WL 3473500 (S.D.N.Y. June 2, 2015) (holding a Black male plaintiff successfully alleged failure to promote under federal law and NYSHRL).

This is precisely what Plaintiff alleges here: in or around September 2021, Dobney—a member of a protected class—told Barrett that she wanted a promotion to Senior Manager (Compl. ¶¶ 69, 71); Barrett proffered a thinly-veiled pretextual excuse as to why Dobney would not be promoted *i.e.*, there was no headcount available to promote her, and the Company did not do promotions in place. *Id.* ¶ 72. The Complaint further alleges that approximately one week later, the Company created a new headcount to promote an individual outside Dobney's protected class (and who was less qualified) to Senior Manager. *Id.* ¶ 75.[11]

Then, again, in late 2021, Dobney alleges that she was forced to "interview" with McHale and "apply" for the Senior Manager for Digital position, although she was the obvious choice for the role. *See id.* ¶¶ 82-86. Nevertheless, the Company denied Dobney the job, instead appointing Eric Levin—a Caucasian male, who lacked the requisite experience. *Id.* ¶¶ 87, 89, 91. The Complaint also alleges facts sufficient to show that Dobney was more than qualified for the positions. *See id.* ¶¶ 11, 85.[12] Plaintiff has met her minimal burden for pleading discrimination as a result of failure to promote at this early stage of the case; no more is required.

Defendants concede that failure to promote allegations have a "liberal pleading standard" under the NYSHRL, and an even more liberal standard under the NYCHRL, yet still assert that Plaintiff has not satisfied the NYSHRL standard because the "requirement entails closely

---

[11] Mr. Peña is a non-Black employee who had been with the Company for a little over a year. *Id.* ¶¶ 76, 80.

[12] Defendants do not contest that Plaintiff is a member of a protected class and that she was qualified for the promotional roles—which in any event, would be a question of fact. The Complaint alleges that, at the time of both promotion opportunities, Dobney had been with the Company for almost 10 years (*see* Compl. ¶ 11) and that Dobney was qualified because, *inter alia*, she had hired and trained the team that the new Senior Manager for Digital would oversee and who were going to be assigned a portion of the larded workflow for which Dobney had already long been responsible. Dobney also had strong relationships with the business partners with whom that Senior Manager would work who relied on the standardized reporting and metrics that Dobney had, herself, developed. *Id.* ¶ 85.

examining the description, location and availability of the position sought, the candidates for promotion, and the circumstances that could give rise to an inference that race was a motivating factor for not promoting the plaintiff." Defs.' Mem. at 9. But this is not the standard: at this early stage, prior to discovery, Plaintiff's allegations that she "was rejected in favor of [a] . . . less-qualified individual[] outside of Plaintiff's protected class, are sufficient to give rise to an inference of discrimination," and are sufficient to withstand  motion to dismiss. *Brophy v. Chao*, 17-CV-9527 (CS), 2019 WL 498251, *12-13 (S.D.N.Y. Feb. 7, 2019) (collecting cases and finding that defendants failed to promote plaintiff due, in part, to his race).[13]

Lastly, it is axiomatic that "[s]ubjecting an employee to unequal pay can, of course, constitute a materially adverse employment action[.]". *Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 532 (S.D.N.Y. 2011); *see also Murray v. UPS*, No. 20-CV-1427 (MKB), 2022 WL 4468295 (E.D.N.Y. Sept. 25, 2022) (collecting cases and holding that plaintiff, a Black male, was paid less than his Caucasian counterparts). Dobney alleges that New York City's Salary Transparency law confirmed her suspicions that she was being paid less than her non-Black counterparts—all further evidence of discrimination. Compl. ¶ 101.

Accordingly, Plaintiff handily alleges race discrimination claims under the NYSHRL and NYCHRL by showing she suffered multiple adverse employment actions.[14] Indeed Defendants' discriminatory intent was plain to see, and Defendants' motion to dismiss must be denied.

---

[13] Defendants vaguely argue that the Complaint does not identity Mr. Peña's race, therefore he is a "person of color" not outside Dobney's protected class. The Complaint clearly differentiates Mr. Peña as a person outside Dobney's protected class by stating he is not Black. *See* Compl. ¶ 80 ("Rather—the commonalities between Mr. Peña and Auster were that they are not Black and had not voiced concerns about the Company's racial inequities.").

[14] Plaintiff alleges other facts, which, at this pre-discovery stage, adequately plead race discrimination (e.g., being yelled and cursed at, and belittled by Defendants' agents on more than one occasion). *See* Compl. ¶¶ 36,45. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) ("Because 'smoking gun' evidence is rare in discrimination cases, plaintiffs usually must rely on 'bits and pieces' of information to support an inference of discrimination, i.e., a 'mosaic' of intentional discrimination.") (citations omitted). Even assuming, *arguendo,* that these facts do not sufficiently allege discrimination (which they do), the adverse employment actions, detailed *supra*, more than plausibly allege discrimination under the liberal state and local pleading standards. *See, e.g.,*

12

## II.    PLAINTIFF SUFFICIENTLY ALLEGES RETALIATION

Plaintiff has sufficiently alleged a retaliation claim. To state a retaliation claim under the NYSHRL and NYCHRL, "plaintiff must show that [they] took an action opposing [their] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (2d (citations omitted).[15] Plaintiff must only show that she engaged in protected activity and that there is a causal connection between a retaliatory act and a protected activity. *See Mihalik,* 715 F.3d at 112. Plaintiff "need not prove that her underlying complaint of discrimination had merit but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).

### A.  Plaintiff Engaged in Protected Activities

Defendants bafflingly argue that Dobney failed to allege that she engaged in protected activities. The Complaint details her *repeated* complaints about race discrimination, including complaints to Barrett, HR and ER, *i.e.*, "quintessential" protected complaints. *See Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 51 (S.D.N.Y. 2009); *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 296 (S.D.N.Y. 2016) (an employee's complaint to a supervisor about discrimination is sufficient to constitute protected activity); *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016).

Dobney sought assistance from Barrett after McHale's disparate treatment on multiple occasions. *See* Compl. ¶¶ 37-38. Just one month after McHale cursed and yelled at Dobney on a Zoom call reducing her to tears, she made multiple reports to the Company of McHale's

---

*Sanderson*, 2020 WL 3100256. Defendants also falsely state that Plaintiff fails to show that less-qualified employees outside her protected class were treated more favorably than she, but Plaintiff alleges multiple instances of the same sufficient to withstand a motion to dismiss. *See, e.g.*, Compl. ¶¶ 52-54, 59-66, 69-80, 83-91, 93-94, 97-101.

[15] Defendants concede that the pleading standards for retaliation claims under NYSHRL and NYCHRL are the same because Plaintiff's retaliation claims accrued post-NYSHRL amendment. *See* Defs.' Mem. at n.4.

mistreatment. *Id.* ¶¶ 45-46. Between the summer of 2020 and the spring of 2021, Dobney complained—repeatedly—to Disney's HR Department about the discriminatory manner in which she was being treated as a result of her race. In March 2020, Dobney formalized her complaint with Disney's ER team. *Id.* ¶¶ 48-49. And, in or around September 2021, Dobney again complained to Barrett about McHale's retaliation. *Id.* ¶ 70.

Defendants grossly mischaracterize the law concerning the requirements to show protected activity underlying retaliation claims. It is *not true* that the NYSHRL or NYCHRL requires a showing that "the protected activity . . . *must* be a complaint about 'an activity prohibited by law'." Defs.' Mem. at 14. To the contrary, *Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 582 (S.D.N.Y. 2012), holds, consistent with long-standing precedent, that "a plaintiff need not establish that the conduct opposed in his complaint was *expressly* illegal only that the employee has a *good faith, reasonable belief* that the underlying challenged actions of the employer violated the law." *Id.* at 581 (emphasis added).[16]

Moreover, Defendants' argument that the *multiple* times Dobney complained to the Company and its agents were *not* about race discrimination is farcical. The Complaint opens with the fact that "for ten years, [Dobney] endur[ed] sustained race-based discrimination, and then, *retaliation for making protected complaints about those racial inequities culminating in her constructive discharge*[.]". Compl. ¶ 3 (emphasis added). Accordingly, the Complaint adequately alleges that Dobney's complaints were squarely tethered to race discrimination.

### B.  A Causal Connection Exists Between the Protected Activities and Adverse Acts

---

[16] Defendants' reference to *Moazzaz v. MetLife, Inc.*, 19-CV-10531 (JPO**),** 2021 WL 827648 (S.D.N.Y. Mar. 4, 2021) is similarly disingenuous. While *Moazzaz* states that "informal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by [law]," under Title VII, *Moazzaz* relies on *Risco v. McHugh*, 868 F. Supp. 2d 75 (S.D.N.Y. 2012), which clarifies that: "a plaintiff is not required to show that the conduct she opposed was in fact unlawful; it is sufficient if the plaintiff had a good faith, reasonable belief that she was opposing a practice prohibited by Title VII." *Risco*, 868 F. Supp. 2d at 111.

Dobney has sufficiently pled a causal connection between her protected activities and the adverse acts that followed. "Plaintiff[s] can indirectly establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Kwan*, 737 F.3d at 845.[17]

Here, Dobney establishes a causal connection to support her retaliation claims because her protected activities were closely followed in time by adverse employment actions. For example, between the summer of 2020 and the spring of 2021, Dobney repeatedly complained to Disney's HR Department about the discrimination that she was facing. Compl. ¶¶ 46, 48-49, 67, 69. Squarely in the middle of those complaints, in March 2020, Dobney formalized her complaint with Disney's ER team. Compl. ¶¶ 48-49. Approximately three months later, Dobney suffered an adverse employment action when McHale instructed the Senior Manager of Financial Analysis to meet with Dobney to discuss her job responsibilities – a meeting that Defendants did not require of Dobney's non-Black counterparts. *Id.* ¶¶ 52-54.[18]

Then, in August 2020, when the Company actually followed up on Dobney's complaints and acknowledged that she was being treated less favorably than her non-Black counterparts, a Disney ER Manager told Dobney she was "lucky" to be in a department that wanted to "learn to do better" and that the Company would send the leadership team to management training to rectify the discriminatory environment. *Id.* ¶¶ 55-56.  McHale berated her for speaking out, and in a veiled threat foreshadowing his retaliatory actions, warned Dobney that she "makes it difficult for him to give her opportunities" *Id.* ¶¶ 68-69.  By late 2020, Defendants had already

---

[17] There is no bright line rule defining the outer limits of the required temporal proximity: "[c]ourts have found temporal relationships as long as ten or eleven months satisfactory to support a causal connection," *Elgalad v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 4849 (VSB), 2018 WL 4572237, at *10 (S.D.N.Y. Sept. 24, 2018), although between two and four months is more common. *See Woods v. Enlarged City Sch. Dist. of Newburgh*, 473 F. Supp. 2d 498, 529 (S.D.N.Y. 2007) (collecting cases) .

[18] McHale engaged in the very same retaliatory tactic when Dobney's direct report complained to HR about discrimination; he then compelled Dobney to fabricate performance issues about that employee. Compl. ¶¶ 50-51.

adversely acted against Dobney by disproportionately increasing her workload. *Id.* ¶¶ 59-64. And, in or around September 2021, Dobney again complained about her disparate treatment. Just one week later, Dobney was denied a promotion. *Id.* ¶¶ 69-75. More, in what was essentially an *ad hoc* adverse groundless performance evaluation, Barrett claimed that the promotion was denied due to amorphous, never previously discussed performance issues. *Id.* ¶ 90.

Defendants' argument that: (1) "the only retaliatory conduct allegedly taken against plaintiff is assigning her an increased amount of work;" and (2) that the increased workload pre-dates the protected activity, and therefore there is no causal connection, falls flat. Defs.' Mem. at 16-17. Plaintiff's disproportionately heavy workload only started in late 2020, after Dobney had engaged in protected activity. *See* Compl. ¶ 59. Plaintiff has established the requisite causal connection at the pleading stage pursuant to the NYSHRL and NYCHRL.[19]

### C. Defendants Engaged in Conduct that Would Reasonably Deter a Person From Engaging in a Protected Activity

Plaintiff adequately alleges that Defendants engaged in conduct that would reasonably deter a person from engaging in protected activity. Defendants again misread the Complaint in arguing that the only retaliatory conduct Dobney alleges is an increase in her workload. Defs.' Mem at 17. This plainly ignores that Dobney also alleges retaliatory conduct in the form of, *inter alia*, employment burdens to which her non-Black counterparts were not subject, disproportionate workload, pay inequity, and denial of promotion/failure to promote. *See supra* at Section I. The retaliation claims meet the pleading standard and Defendants' motion must be denied.

---

[19] The Complaint references a "burgeoning workload" in 2019, but this instance is distinct from the disproportionately heavy workload Defendants discriminatorily gave Plaintiff in late 2020, where Defendants doubled Plaintiff's workload and provided her no staff support. *See* Compl. ¶¶ 41, 59.

### III.    PLAINTIFF WAS CONSTRUCTIVELY DISCHARGED

"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011) (citations omitted).[20] A plaintiff need not prove "that her employer intended to cause her resignation, but must show that the defendant's actions were deliberate." *Knight v. MTA N.Y. City Transit Auth.*, No. 19 CV 1428 (PKC)(LB), 2021 WL 10424509 (E.D.N.Y. Sept. 28, 2021). Constructive discharge is based on the "cumulative effect" of multiple adverse employment actions. *Id.*

In *Knight*, the minority plaintiff sufficiently pled constructive discharge, because she alleged that she suffered multiple adverse actions, including not being promoted while defendant promoted less experience white employees; retaliation for complaining about her disparate treatment; and facing unfounded disciplinary charges. *Id.* (plaintiff's race discrimination allegations made it "at least plausible that plaintiff was intentionally made to feel that she was not wanted as an employee."). *See Batista v. Degennaro*, No. 13 Civ. 1099(DAB), 2014 WL 1046735, *7 (S.D.N.Y. Mar. 10, 2014) (adverse actions plaintiff suffered (such as intense special scrutiny), when taken cumulatively, plausibly alleged constructive discharge).

Like in *Knight*, Dobney has sufficiently pled constructive discharge because, when taken cumulatively, the adverse actions, created intentionally by Defendants, would make any reasonable person in her shoes resign. As discussed *supra* at Sections I & II, Defendants, among

---

[20] Courts have not yet fully defined the more liberal pleading standard for constructive discharge under NYCHRL. *See Crookendale v New York City Health & Hosps. Corp.*, 175 A.D.3d 1132, 1132 (1st Dep't 2019) (constructive discharge under NYCHRL similar to NYSHRL, with plaintiff showing that defendant "deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign[.]").

other things, yelled, cursed at, and belittled Dobney; they gave her employment requirements and burdens disproportionate to her non-Black counterparts; they more than doubled her workload without providing her staff assistance; they failed to promote her in favor of less qualified, non-Black employees; they paid her less than non-Black employees; and they retaliated against her when she dared to complain about her disparate treatment. Dobney had no recourse because when she did lobby valid complaints regarding Defendants' discrimination, Defendants repeatedly retaliated against her. Any reasonable person would feel compelled to resign if their only options for recourse were met with retaliation. *See Batista*, 2014 WL 1046735, n.4 (holding that plaintiff "adequately link[ed]" her discrimination complaints met with retaliation to her constructive discharge). In sum, Defendants deliberately created an environment where Dobney was repeatedly mistreated due to her race, and Defendants deliberately did nothing to improve their discriminatory workplace. Defendants' intolerable actions would compel any reasonable person quit or resign. Therefore, Plaintiff has plausibly alleged constructive discharge.

## IV.   DISNEY AND ABC WERE BOTH PLAINTIFF'S EMPLOYER

As an initial matter, "[w]hether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014). But even assuming that the issue is properly addressed now, the integrated enterprise test considers four factors together: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995). Here, the Complaint amply alleges that Defendants ABC and Disney are an integrated enterprise sufficient to survive a motion to dismiss.

### A.  Interrelation of Operations

Plaintiff alleges that Disney is organized into business segments, with frequent company-wide reorganizations directed, driven, and widely publicized by Disney, reflecting centralized control and oversight of its separate business segments. Compl. ¶¶ 109 n.4, 138. For example, during Dobney's tenure, Disney reorganized, creating an all-powerful Disney-wide department "with full accountability for the financial results of Disney's entire media and entertainment business." *Id*. ¶¶ 109, 111-12. Dobney was an employee in this Disney-run group and specifically, her work, financial analysis supporting ABC, was core to it. *Id*. ¶ 113. Her supervisors, McHale and Barrett, reported regularly to Disney's management. *Id*. ¶¶ 140-41.

Dobney worked in a Disney-owned building that brandished the Disney logo and its ownership of ABC. The interrelatedness of operations is further manifested in Disney's direct control of significant aspects of employment, including, ER, HR, directing a lack of pay transparency, issuing Companywide employment policies and the Employee Manual, and the Disney CEO most recently, mandating layoffs. *Id*. ¶¶ 119, 126, 146-47. Factors such as these go well beyond a typical parent-subsidiary relationship and have been found to demonstrate interrelatedness. *See, e.g.*, *Cook*, 69 F.3d at 1241 (parent ran a subsidiary "in a direct, hands-on fashion, establishing the operating practices and management practices of" the subsidiary).[21]

**B.** Centralized Control of Labor Relations

Defendants' effort to minimize the extent of Disney's centralized labor relations is unavailing. In *Parker v. Columbia Pictures Indus*., the Second Circuit recognized that the integrated employee test is satisfied if the employee "shows participation by the defendant that is

---

[21] *Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 252-53 (S.D.N.Y. 2007), *amended* (Aug. 16, 2007), relied on by Defendants, (Defs.' Mem. at 23) is inapposite. There, the plaintiff did not demonstrate the degree of entanglement pled in the instant case. For example, the Court noted that the parent company's Deputy General Counsel's maintenance of the minute books reflected that the Company was "keeping track" of the subsidiary's operations, not that it was controlling them. *Velez*, 244 F.R.D. at 253; Defs.' Mem. at 23. That is a far cry from the facts here, where, for example, Disney set up a segment, of which Dobney was part, to have full accountability for the financial accounting of its entire media and entertainment business.

sufficient and necessary to the total employment process [of the employer], even absent total control or ultimate authority over hiring decisions." 204 F.3d 326, 341 (2d. Cir. 2000).

Here, Plaintiff alleges that Disney maintains and controls a centralized recruitment process through an integrated career website; common payroll processing; centralized benefits; consolidated employee policies including an Employee Manual; payroll practices; policies limiting pay transparency; and centralized initiatives including its purported Diversity Equity and Inclusion ("DEI") initiative. Compl. ¶¶ 115-22. More, it was *specifically Disney's* central HR staff that handled Dobney's employee labor and employee issues, including issues related to leave, health benefits, and termination; ABC HR staff did not handle those core employee issues and had no one in the New York City office to do so. *Id*. ¶¶ 123-24. Significantly, ABC did not handle Dobney's race discrimination complaints—*Disney's HR and ER staff exclusively fielded and investigated those concerns* (albeit inadequately). *Id*. ¶¶ 128-34. Disney's employees' failure to timely and adequately investigate and address Dobney's complaints, even after acknowledging that she was being treated less favorably than her non-Black counterparts, (*see id*. ¶ 55), allowed the discriminatory and retaliatory conduct to continue and worsen.[22]

**C.** Common Management, Common Ownership, and Common Financial Control

Disney is the parent of ABC, sharing the same Board of Directors, staff, and is managed with hands-on oversight by Disney executives, as illustrated by Disney's numerous reorganizations increasing Disney's engagement in day-to-day activities and the CEO's regular meetings with heads of the business segments. *See id.* ¶¶ 109-12. Disney's management (which

---

[22] Defendants' reliance on *Weiss v. Starr Rest. Org., LP*, No. 20-CV-8090 (JMF), 2021 WL 3099895, *5 (S.D.N.Y. July 21, 2021) is inapposite. There, the court concluded that the plaintiff did not sufficiently show that the defendant corporation controlled him as an employee, because "allegations of common ownership and common purpose, *without more,* do not answer the fundamental question of whether each defendant-controlled Plaintiff[] as [an] employee[]." That is not the case here. Plaintiff alleges—through a panoply of examples—Disney's control over Dobney throughout the life cycle of her job—from hiring, to paying her, to administering benefits, to limiting transparency concerning pay, and critically, to handling her complaints. Compl. ¶¶ 106-147.

includes employment-related actions) is aimed at increasing revenue, most recently by Companywide layoffs. *Id.* ¶¶ 146-47. Indeed, in telling ABC News staff about layoffs, ABC's head, Kim Godwin, made clear that the decision came from Disney. Compl. ¶¶ 138-47. These facts support Plaintiff's claim that Disney and ABC are a single employer.

**D.** Judicial Notice of Court Proceedings

Plaintiff respectfully requests that the Court take judicial notice of a Class Action Complaint and related filings in *Rasmussen v. The Walt Disney Company, et al.*, Case No. 19STCV10974 (LA Sup. Ct. Apr. 2, 2019) alleging that Disney systemically pays women in California less than men.[23] In that case, as here, plaintiffs argue that Disney and its affiliates (including ABC) are an integrated enterprise.[24]

This Court may review judicially noticeable facts on a motion to dismiss. *Guzman v. United States*, No. 11 Civ. 5834 (JPO), 2013 WL 543343 at *3 (S.D.N.Y. Feb. 14, 2013). Rule 201 of the Federal Rules of Evidence provides that a court take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). As this Court has emphasized, the Court may take judicial notice of documents filed in other courts, not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings. *Guzman*, 2013 WL at *3 (citing cases).

The *Rasmussen* filings establish that the *Rasmussen* plaintiffs have uncovered information which supports Dobney's contention that Plaintiff's integrated enterprise allegations

---

[23] *See* Declaration of Marla Tepper ("Tepper Decl.") Exh. A, *Rasmussen* Fourth Amended Compl. ¶¶138-45.
[24] *See* Tepper Decl. Exh. B, *Rasmussen* Pls' Mem. at 2, 13-15.

are an appropriate inquiry for discovery, and that it is premature to resolve this claim at this stage of litigation.[25]  *See also Brown*, 756 F.3d at 226.

## V.   PLAINTIFF ADEQUATELY ALLEGES THAT MCHALE AND BARRETT AIDED AND ABETTED VIOLATIONS OF THE NYSHRL AND NYCHRL

Under the NYSHRL, it is an unlawful practice for any person to "aid, abet, incite, compel or coerce the doing of any act" forbidden under the statute. N.Y. Exec. L. § 296(6). Individuals may be held liable for aiding and abetting if they participate in the conduct giving rise to a discrimination claim. *Chau v. Donovan*, 357 F. Supp. 3d 276, 286 (S.D.N.Y. 2019). Aiding and abetting claims under the NYCHRL are analyzed under the same standard. *Bonterre v. City of New York*, 18 Civ. 745 (ER), 2021 WL 4060358 (S.D.N.Y. Sept. 7, 2021).

Here, as pled, the individual Defendants—McHale and Barrett—participated in the conduct giving rise to Plaintiff's claims. McHale repeatedly engaged in illegal discriminatory and retaliatory acts. *See* Compl. ¶¶ 34-37, 45, 50, 52, 59, 66, 68, 83, 93, 95. Barrett condoned and endorsed McHale's conduct by failing to investigate and address Dobney's repeated complaints. *See id* ¶¶ 38, 40, 69-73, 90 n3. Courts have repeatedly held that aider and abettor liability extends to supervisors who, like Barrett, fail to take appropriate remedial measures despite being informed about discriminatory conduct. *Cid v. ASA Inst. Of Bus. & Computer Tech., Inc.*, No. 12-CV-2947 (DLI)(VMS), 2013 WL 1193056 (E.D.N.Y. Mar. 22, 2013) (citing cases); *see also Moazzaz,* 2021 WL 827648 (at the pleading stage, a supervisor's failure to investigate a complaint may give rise to an inference of aiding and abetting).

Defendants erroneously argue that McHale and Barrett cannot be liable for aiding and abetting their own alleged violations. Defs.' Mem. at 20. Courts have consistently held that an

---

[25] *See* Tepper Decl. Exh. C, *Rasmussen* Defs' Counsel Felicia Page Decl. at ¶¶ 3-5 (describing, *inter alia,* sealed and redacted documents as including information on how Disney determines compensation; Disney's "unique" hiring practices, and how the Disney Companies are organized, all highly relevant to the integrated enterprise issue here).

individual can be liable for aiding and abetting unlawful discrimination, even where the individual's actions serve as the predicate for the employer's liability. *See, e.g.*, *Emanuel v. GAP, Inc.*, No. 19-CV-03617 (PMH), 2023 WL 5211007 (S.D.N.Y. Aug. 14, 2023); *Bonterre*, 2021 WL 4060358 ("a claim is stated if an employee participates in the alleged conduct, regardless of whether such participation also constitutes a primary violation of NYSHRL or whether other employees were involved."). The instant case is also distinguishable from *United States v. New York City Dep't of Educ.*, 407 F. Supp. 3d 365 (S.D.N.Y. 2018) (Defs.' Mem. at 20), where the court held that a _single_ defendant accused of discrimination could not be held liable for aiding and abetting their own discriminatory behavior. Finally, Plaintiff has adequately stated a claim for race discrimination and retaliation. *Supra* at Sections I & II. Therefore, Defendants' argument that the aiding and abetting claims fail for failure to state an underlying claim is without merit.

## VI.    PLAINTIFF ADEQUATELY ALLEGES SUPERVISORY LIABILITY

NYCHRL § 8-107[13][b] provides for an employer's vicarious liability for conduct of an employee where the employee "exercised managerial or supervisory authority" over the plaintiff; the employer knew of such conduct and either acquiesced in or failed to take immediate and appropriate corrective action; or the employer should have known of the discriminatory conduct and "failed to exercise reasonable diligence to prevent such discriminatory conduct."

Plaintiff adequately alleges that McHale and Barrett had managerial and/or supervisory authority over her. Barrett held a senior-level position and made employment decisions concerning Dobney. *See* Compl. ¶¶ 6, 19, 33. Dobney repeatedly communicated with Barrett about the illegal discriminatory and retaliatory conduct to which the Company was subjecting her. *Id.* ¶¶ 28, 31-32, 70-71, 90-91. She complained formally and informally to Disney's HR and ER personnel. *Id.* ¶¶ 48-49, 67, 129-32. *See supra* at Section III. Barrett and McHale regularly

23

reported to Disney executives. *Id*. ¶¶ 140-41. Consequently, both ABC and Disney knew or should have known of the ongoing unlawful discriminatory and retaliatory conduct.

Inaction, delay, and lip service characterized the Company's response to Plaintiff's ongoing complaints of race discrimination and retaliation. For example, despite her complaints concerning racial disparity in 2016 and 2018, Plaintiff was not assigned a direct report until 2019, and even then, one with a full portfolio of work outside Plaintiff's workflow. *Id*. ¶ 41. Between the summer of 2020 and the spring of 2021, Dobney complained—repeatedly—to Disney's HR about the unfair treatment, filing a formal complaint in July of 2020. *Id*. ¶¶ 48-49, 129-30. In a shockingly patronizing and belittling response, four years after she first complained about racial inequities and disparities, Disney's HR Manager told Plaintiff she was "lucky" to work in a department that "wanted to learn" and told Plaintiff the managers would be required to attend training. *Id*. ¶¶ 55-56. This anemic response yielded no improvements except catalyzing McHale to burden Dobney with a crushing workload far greater than her non-Black counterparts. *Id*. ¶¶ 59-60. "Lucky" hardly captures how Plaintiff, who was then pregnant, felt. Around this time, the Company *acknowledged* that they were treating Plaintiff less favorably than her non-Black counterparts but still did nothing. *Id*. ¶ 61. Similarly, Dobney's complaint to Barrett in 2021 and request for a deserved promotion resulted in a pretextual excuse that there was no budget for promotions and that promotions in place did not happen, both of which proved untrue within weeks. *Id*. ¶¶ 69-73.

Tellingly, the Company did nothing to ensure that the process for promotions in Dobney's team would not be infused with continued discrimination and retaliation; McHale interviewed Plaintiff and Barrett covered up the discrimination with pretexts about the denial. *Id*. ¶¶ 71-81.

24

In May 2022, Plaintiff described her situation to a new Disney HR Manager who told her ER would reach out to her. *Id.* ¶ 131. Revealing the Company's utter disregard for the racial discrimination and retaliation Plaintiff faced, or procedures for effectively and timely handling and addressing discrimination complaints, the ER Manager said that there were no records related to Plaintiff's complaints, and that she would have to start the investigation anew. *Id.* ¶ 132. Four months later, the investigation was still not completed. *Id.* ¶¶ 132-33.

Because the Complaint alleges that McHale and Barrett exercised supervisory and managerial responsibility, and Plaintiff has plausibly pled illegally and discriminatory acts, liability may be imputed to Plaintiff's employer, ABC and Disney. *See Quintero v. Angels of the World*, No. 19-CV-6126 (DG), 2021 WL 4464123 (E.D.N.Y. Sept.10, 2021).[26]

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss must be denied.

Dated: September 20, 2023
New York, New York

                                        KALMANSON COHEN, PLLC

                                        ____/s/ Randi M. Cohen____
                                         Randi M. Cohen
                                        Marla Tepper
                                        Kimberly Kalmanson
                                        Kalmanson Cohen PLLC
                                        165 Broadway, 23rd Floor
                                        New York, New York 10006
                                        E: randi@kalmansoncohen.com
                                        *Attorneys for Plaintiff Venessa Dobney*

---

[26] Alternatively, the Court may consider the question of whether ABC and Disney took immediate and corrective actions an issue of fact, which would be inappropriate to resolve on a motion to dismiss. *Melendez v. New York City Transit Authority et al.*, Index No. 159390/2013, 2021 WL 2627513 (N.Y. Sup Ct. N.Y. Cty. June 24, 2021), *aff'd*, 204 A.D.3d 542 (1st Dep't 2022).

25