UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
VENESSA DOBNEY,
                            Plaintiff,

                  -v-

THE WALT DISNEY COMPANY, *et al.*,
                           Defendants.
———————————————————————

23-CV-5380 (JPO)

ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Venessa Dobney brings this action against Defendants The Walt Disney Company ("Disney"), American Broadcasting Companies, Inc. ("ABC"), Elizabeth Barrett, and Richard McHale, for violations of the New York State Human Rights Law (NYSHRL), New York State Executive Law §§ 290 *et seq.*, and the New York City Human Rights Law (NYCHRL), Administrative Code of the City of New York §§ 8-101 *et seq*. Presently before the Court is Defendants' motion to dismiss. For the following reasons, Defendants' motion is denied.

**I.    Background**

    **A.    Factual Background**

The following facts are taken from the Complaint and are assumed to be true for purposes of resolving Defendants' motion to dismiss. (*See* ECF No. 1-4 ("Compl.").) In September 2012, Dobney, who is a Black woman, began working as a Senior Financial Analyst in the Disney/ABC Television Group's Finance Department, supporting ABC News. (*Id.* ¶¶ 11, 23.) At all relevant times, Elizabeth Barrett had supervisory and managerial authority and control over Dobney. (*Id.* ¶ 16.)

Beginning in 2016, Dobney alleges, she suffered from various discriminatory and retaliatory acts. When Dobney was first promoted to Manager in January 2016, she was not assigned any direct reports. (*Id.* ¶¶ 26-27.) Despite her raising concerns about her lack of a direct report, she was not assigned a direct report until 2019. (*Id.* ¶¶ 28-30, 41.) When Dobney was finally assigned her first direct report, Dobney alleges that the assignment was a "sham," as the direct report was an employee already with the Company who had a full portfolio of existing work that was not within Dobney's workflow. (*Id.* ¶ 41.) This created a situation in which instead of providing support, the direct report added to her workload. (*Id.*)

In 2019, ABC reorganized the Finance Department, and Dobney began reporting to Richard McHale. From the beginning of his supervision over Dobney, McHale was "openly hostile" and "aggressive and verbally abusive to [her] without reason or provocation, treating her differently from her non-Black counterparts." (*Id.* ¶¶ 34-35, 45.) McHale "refused to provide [her] with an office commensurate with her title or with those of her non-Black counterparts," "did not give [her] the same responsibilities or opportunities as her non-Black colleagues, such as interviewing candidates for the team," and "criticized her more than non-Black counterparts." (*Id.* ¶¶ 36-37.) As a result of McHale's hostile treatment toward her, Dobney complained to Barrett and the Employee Relations Department. (*Id.* ¶ 38.) Barrett did nothing to address McHale's conduct. (*Id.* ¶ 40.) Between the summer of 2020 and the spring of 2021, Dobney complained to Disney's Human Resources Department repeatedly about McHale's treatment, and in March 2020, Dobney filed a formal complaint with the Employee Relations Department. (*Id.* ¶¶ 48-49.) In July 2020, at McHale's direction, the Senior Manager of Financial Planning and Analysis met with Dobney to review her job responsibilities, although the meeting was not conducted in relation to any stated performance issues and Dobney's non-Black counterparts had

not been subjected to the same discussion, even though those individuals held more junior positions. (*Id.* ¶¶ 52-54.)

By late 2020, McHale doubled Dobney's responsibilities with no additional staff, which Dobney alleges was in retribution for her complaints. (*Id.* ¶ 59.) Her workload was "spiraling" and consisted of both junior analyst and managerial work. (*Id.* ¶ 62.) Dobney alleges that she was "now doing the job of more than three people" and the Company acknowledged that she had a workload that at least exceeded the capacity of one employee. (*Id.* ¶¶ 60-61.) Nevertheless, she continued to receive positive performance reviews. (*Id.* ¶ 60.) Dobney's "non-Black counterparts did not suffer the same over-burdened workload." (*Id.* ¶ 63.) In early 2021, two of her non-Black counterparts, who were on her team and had the same title as her, confirmed that McHale was burdening Dobney with "far more work than was being asked of them." (*Id.* ¶ 66.) In addition, each of those individuals had direct reports to whom to delegate junior level analyst tasks. (*Id.*) Dobney once again raised these concerns to the Human Resources Department with documentation evidence of the disparate workloads. (*Id.* ¶ 67.) McHale then "berated" Dobney about having reported to Human Resources and stated that Dobney "makes it difficult for him to give her opportunities." (*Id.* ¶ 68.)

In or around September 2021, Dobney complained to Barrett that despite Dobney's exceptional performance with an ever-growing workload she had not been rewarded, and that she wanted to be promoted to Senior Manager. (*Id.* ¶¶ 69-71.) Barrett responded that there was no availability for a promotion, and that promotions were not granted absent an expansion to an employee's workload. (*Id.* ¶ 72.) Yet just one week later, another employee, Euris Peña, who had been at ABC for a little over a year, was promoted to Senior Manager without having an expansion to his workload. (*Id.* ¶¶ 76, 79.) The Senior Manager position had not been

advertised, and although Peña and another employee had been notified of the position and invited to interview, Dobney had not been. (*Id.* ¶ 77.) In addition, around the same time, Leah Auster, who was another relatively short-term employee, was also promoted in place to Director without having an expansion in her workload. (*Id.* ¶ 79.) Neither Peña nor Auster is Black, and neither had voiced concerns about the Company's racial inequities. (*Id.* ¶ 80.) At this point, Dobney escalated her complaints to ABC Executive Vice President, Derrick Medina. (*Id.* ¶ 81.)

In late 2021, Dobney went out on maternity leave. (*Id.* ¶ 82.) During her maternity leave, McHale invited Dobney to interview for two Senior Manager roles that had become available. Although she was an obvious choice for the Senior Manager for Digital, the position went to Eric Levin, who is not Black, and who Dobney alleges lacked the requisite experience for the position. (*Id.* ¶¶ 84, 89.) Dobney had hired and trained the team that the new Senior Manager for Digital would oversee, had long been responsible for a large portion of the work that would now be assigned to the team, had strong relationships with the business partners with whom that Senior Manager would work, and had herself developed the standardized reporting and metrics on which those business partners relied. (*Id.* ¶ 85.) When Dobney asked Barrett why she had been denied the position, Barrett cited Levin's experience and stated that Dobney had had "performance issues," although Dobney had received only positive performance feedback and reviews, both orally and written. (*Id.* ¶¶ 90, 92.) Moreover, "in a moment of candor," Levin shared with Dobney that the "Senior Manager for Digital role was quite different from the majority of his experience." (*Id.* ¶ 91.) After denying her the Senior Manger position, McHale offered her the chance to interview for a lateral manager role that would be reporting to the Senior Manager. (*Id.* ¶ 93.) No other person reporting to McHale had ever been made to

interview for a lateral role, and no other person had ever been made to interview for any promotional opportunities within the team.  (*Id.* ¶¶ 94-95.)

Finally, Dobney alleges that since the beginning of her employment with the Company in 2012, she was paid less than her non-Black counterparts.  (*Id.* ¶¶ 97-98.)  This was confirmed for her when New York City's Salary Transparency Law went into effect in 2022. Dobney returned from maternity leave in August 2022.  (*Id.* ¶ 101.)  Given the "intolerable conditions taking a toll on her physical and mental health," Dobney was constructively discharged in September 2022.  (*Id.* ¶¶ 102-105.)

### B. Procedural History

Dobney first filed a complaint in this Court on March 16, 2023.  (ECF No. 1-1.) Defendants moved to dismiss, and Dobney informed this Court that she intended to file an amended complaint.  (ECF No. 1-2.)  Dobney subsequently filed a notice of voluntary dismissal.  (ECF No. 1-3.)  Dobney then commenced the present action in New York Supreme Court, New York County.  (ECF No. 1-4.)  Defendants filed a notice of removal pursuant to 28 U.S.C. § 1332, invoking this Court's diversity jurisdiction.  (ECF No. 1.)  Defendants filed a motion to dismiss on August 25, 2023.  (ECF No. 14.)  Dobney filed an opposition to the motion to dismiss on September 20, 2023.  (ECF No. 16.)  Defendants filed a reply in support of their motion to dismiss on September 29, 2023.  (ECF No. 18.)

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint."  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002).  While

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court must "draw all inferences in the light most favorable to the non-moving party[ ]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

### III. Discussion

Dobney brings claims against all Defendants for discrimination, retaliation, and aiding and abetting in violation of the NYSHRL and NYCHRL, as well as for supervisor liability under the NYCHRL against the Walt Disney Company and ABC.

### A. Discrimination in Violation of the NYSHRL and NYCHRL

The NYSHRL and NYCHRL prohibit discrimination in the terms and conditions of employment based on race and other protected categories. N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a)(3). On August 12, 2019, "the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'" *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (citing N.Y. Exec. Law § 300). The amendment took effect on the date it was signed into law, August 12, 2019. *See id.* (citing S. 6577, 242d Leg. § 16 (N.Y. 2019)). Under the NYCHRL's liberal standard, a plaintiff must allege "differential treatment—that she is treated less well— because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (internal citation and quotation marks omitted). "[T]he challenged conduct need not even be 'tangible' (like hiring or firing)." *Id.* (internal citation omitted). NYSHRL discrimination claims based on conduct that accrued prior to the amendment taking effect are analytically identical to Title VII claims, and thus require a plaintiff to make "a

showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  The facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Id.*  "An inference of discrimination can arise from circumstances including . . . the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Id.* at 312 (internal citation and quotation marks omitted).

The parties dispute the pleading standard Dobney is required to meet in order to sustain a discrimination claim under the NYSHRL.  Defendants argue that because Dobney's discrimination claims include conduct that occurred before the NYSHRL amendment went into effect, the Title VII framework applies to Dobney's NYSHRL claims.  (ECF No. 15 at 3.)  Dobney contends that most of her discrimination claims accrued after the amendment went into effect, and that the NYCHRL framework applies to those NYSHRL claims.  (ECF No. 16 at 7.)  The Court need not resolve this dispute because it concludes that Dobney's NYSHRL discrimination claims comfortably meet both standards.

First, Dobney sufficiently pleads a discrimination claim under the NYSHRL and NYCHRL as a result of Defendants' subjecting her to burdens to which her non-Black counterparts were not subject.  Since Dobney began reporting to McHale in 2019, McHale was "openly hostile" to her and "was aggressive and verbally abusive to [her] without reason or provocation, treating her differently from her non-Black counterparts" including through

"criciz[ing] her more than [her] non-Black counterparts." (Compl. ¶¶ 35-37.) McHale also refused to provide her with an office commensurate with those of her non-Black counterparts or give her the "same responsibilities or opportunities as her non-Black colleagues, such as interviewing candidates for the team." (*Id.* ¶¶ 36-37.) In July 2020, McHale required Dobney to attend a meeting with a Senior Manager of Financial Planning to review Dobney's job description, even though he did not require her non-Black counterparts to attend such a meeting. (*Id.* ¶¶ 52-54.) In 2021, McHale required Dobney to interview for a lateral job opportunity while he had never required another person reporting to him to interview for a lateral role. (*Id.* ¶¶ 93-94.)

Dobney further alleges that she was assigned a "disproportionately heavy workload relative to her [non-Black counterparts], which constitutes an adverse employment action." *Sanderson v. Leg Apparel LLC*, No. 19-CV-08423, 2020 WL 3100256, at *6 (S.D.N.Y. June 11, 2020) (citing *Feingold v. New York*, 366 F.3d 138, 152-53 (2d Cir. 2004)). Dobney alleges that two non-Black individuals who were on her team and had the same title as she did confirmed that McHale was burdening her with far more work than them, and that they had direct reports to provide them with assistance. (Compl. ¶ 66.) Because Dobney alleges that her non-Black counterparts were assigned less work, Dobney has met her minimal burden to allege facts suggesting an inference of discriminatory motivation. *See Sanderson*, 2020 WL 3100256, at *6.

Dobney also sufficiently alleges a discrimination claim under the NYSHRL and NYCHRL as a result of Defendants' failure to promote her as compared with her non-Black counterparts. "To plead a prima facie case for discriminatory failure to promote, a plaintiff must demonstrate (1) that he is a member of a protected class; (2) that he applied for a promotion to a position for which he was qualified; (3) that he was rejected for the position; and (4) after this

8

rejection, the position was filled by someone outside the protected class who was similarly or less well qualified than the plaintiff, or the employer kept the position open and continued to seek applicants." *Gordon v. City of New York*, No. 14-CV-6115, 2015 WL 3473500, at *7 (S.D.N.Y. June 2, 2015) (citing *Yu v. N.Y.C. Hous. Dev. Corp.,* 494 F. App'x 122, 124–25 & n. 4 (2d Cir.2012) (summary order)).  Dobney adequately alleges two discrimination claims as a result of Defendants' failure to promote.  First, in or around September 2021, Dobney told Barrett that she wanted a promotion to Senior Manager.  (Compl. ¶¶ 69, 71.)  Barrett claimed there was no headcount available to promote her, and that the Company did not do promotions in place absent an expansion of workload.  (*Id.* ¶ 72.)  However, just one week later, another employee, Peña—who is not Black and had been with the Company for only a little over a year—was promoted in place to Senior Manager without an expansion in his workload.  (*Id.* ¶¶ 75-80.)  Second, in late 2021, Dobney applied for the Senior Manager of Digital position.  (*Id.* ¶ 83-84.)  As detailed above, Dobney was well qualified for the position.  (*Id.* ¶¶ 84-85.)  However, Dobney was not offered the position, which instead went to another employee, Levin, who is not Black and was less qualified for the position.  (*Id.* ¶ 89.)  These allegations are sufficient to sustain a discrimination claim as a result of Defendants' failure to promote.  *See Brophy v. Chao*, No. 17-CV-9527, 2019 WL 498251, at *5 (S.D.N.Y. Feb. 7, 2019) ("Plaintiff's allegations that he was rejected in favor of. . . younger and less-qualified individuals outside of Plaintiff's protected class, are sufficient to give rise to an inference of discrimination.") (internal citation and quotation marks omitted).

   Dobney also sufficiently pleads a discrimination claim under the NYSHRL and NYCHRL as a result of Defendants' paying her less than her non-Black counterparts.  "Subjecting an employee to unequal pay can, of course, constitute a materially adverse

9

employment action." *Butler v. New York Health & Racquet Club*, 768 F. Supp. 2d 516, 532 (S.D.N.Y. 2011) (citing *Borrero v. Am. Express Bank Ltd.*, 533 F.Supp.2d 429, 438 (S.D.N.Y.2008)). Dobney alleges that New York City's Salary Transparency law allowed her to confirm that she was being paid less than her non-Black counterparts. (Compl. ¶ 101.) The Court concludes that Dobney has alleged multiple adverse employment actions, and therefore, has adequately pleaded discrimination under the NYSHRL and NYCHRL.

Finally, Dobney sufficiently alleges a claim for constructive discharge. "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011). "In analyzing a claim of constructive discharge, 'the effect of a number of adverse conditions in the workplace is cumulative.'" *Madray v. Long Island Univ.*, 789 F. Supp. 2d 403, 410 (E.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 90 (2d Cir.1996)). Defendants argue that Dobney's constructive discharge claim should be dismissed because her underlying discrimination and retaliation claims lack merit. (ECF No. 15 at 19-20.) As discussed above, and as further discussed below, the Court concludes that Dobney has adequately alleged discrimination and retaliation claims. Dobney has adequately alleged that she suffered multiple adverse actions, including failure to promote, as well as retaliation for complaining about her disparate treatment. Considering these adverse actions cumulatively, the Court concludes that a reasonable person in the Dobney's shoes would have felt compelled to resign. The Court therefore concludes that Dobney has adequately alleged a constructive discharge claim.

B.     Retaliation in Violation of the NYSHRL and NYCHRL

To state a claim for retaliation under the NYSHRL and NYCHRL a plaintiff must allege "that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal citations omitted).  A plaintiff "need not prove that her underlying complaint of discrimination had merit but only that it was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (internal citations and quotation marks omitted).

Dobney adequately alleges that she engaged in a protected activity.  Dobney alleges that on various occasions over the span of several years, she made complaints regarding the ways in which Defendants subjected her to burdens to which her non-Black counterparts were not subject to Barrett (Compl. ¶¶ 37-38), the Human Resources Department (*id.* ¶¶ 48, 67, 130-131), and the Employee Relations Department (*id.* ¶¶ 49, 129, 132.)  "Raising concerns of discrimination to a human resources department is quintessential protected activity." *Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 51 (S.D.N.Y. 2009).

Dobney also adequately alleges a causal connection between at least one protected activity and conduct on the part of her employer that was reasonably likely to deter a person from engaging in a protected activity.  "[A] plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." *Kwan*, 737 F.3d at 845.  The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady*

11

*Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001).  Dobney alleges, for example, that when two of her non-Black counterparts confirmed that McHale was burdening Dobney with far more work than was being asked of them, Dobney brought a complaint to the Human Resources Department with documentation evidencing the disparate workloads.  (Compl. ¶¶ 66-67.)  McHale then "berated" Dobney "about having reported to Human Resources that she was being set up for failure and stated that [she] 'makes it difficult for him to give her opportunities.'"  (*Id.* ¶ 68.)  "Verbal attacks alone can meet [the] standard" for a retaliatory action that is "reasonably likely to deter a person from engaging in protected activity."  *McHenry*, 510 F. Supp. 3d at 72.  The Court concludes that Dobney has adequately alleged retaliation claims in violation of the NYSHRL and NYCHRL.

        **C.**        **Aiding and Abetting in Violation of the NYSHRL and NYCHRL**

Under the NYSHRL, it is an unlawful practice for any person, regardless of supervisor status, to "aid, abet, incite, compel or coerce" any actionable discriminatory act.  N.Y. Exec. L. § 296(6).  To state an aiding and abetting claim under § 296(6), and plaintiff must allege that a defendant participated in the discriminatory acts.  *Chau v. Donovan*, 357 F. Supp. 3d 276, 286 (S.D.N.Y. 2019).  Aiding and abetting claims under the NYCHRL are analyzed under the same standard as under the NYSHRL.  *Bonterre v. City of New York*, 18-CV-745, 2021 WL 4060358, at *7 (S.D.N.Y. Sept. 7, 2021).  Dobney alleges that McHale repeatedly engaged in illegal discriminatory and retaliatory acts (Compl. ¶¶ 34-37, 45, 50, 52, 59, 66, 68, 83, 93, 95), and that Barrett condoned and endorsed McHale's conduct by failing to take appropriate remedial measures despite having knowledge of the discriminatory acts (*Id.* ¶¶ 38, 40, 69-73, 90 n.3).

Defendants move to dismiss the aiding and abetting claims against defendants Barrett and McHale "because the two individual defendants are the same persons who allegedly carried out the discrimination and retaliation, they cannot be liable for aiding and abetting those practices."  (ECF

12

No. 14 at 20.) Although there "has been some disagreement among district courts in this circuit regarding the extent to which an individual may be held liable under § 296(6) for conduct for which they are also the principal actor," the Court "will adhere to the 'majority' interpretation that a claim is stated if an employee participates in the alleged conduct, regardless of whether such participation also constitutes a primary violation of NYSHRL or whether other employees were involved." *Bonterre*, 2021 WL 4060358, at *7-8.

As discussed above, Dobney has adequately alleged that McHale and Barrett participated in discriminatory acts. The Court concludes that Dobney has adequately alleged aiding and abetting claims under the NYSHRL and NYCHRL.

### D. Supervisor Liability under the NYCHRL against the Walt Disney Company and ABC

NYCHRL § 8-107(13)(b) provides that "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee" where the employee "exercised managerial or supervisory authority" over the plaintiff; the employer knew of the employee's "discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action"; or the employer should have known of the employee's "discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

As to Defendants ABC and Disney, Defendants move to dismiss this claim on the ground that there is no underlying unlawful discriminatory practice committed by Barrett or McHale. (ECF No. 14 at 21.) As discussed above, the Court concludes that Dobney has adequately alleged unlawful discriminatory acts committed by Barrett and McHale. Defendants further contend that Disney cannot be liable under the supervisor liability theory because Disney did not employ Barrett or McHale. Dobney alleges that ABC and Disney were both her direct employers, or in the alternative,

13

that they acted as a single employer in general and specifically with respect to Dobney. (Compl. ¶ 15.)

"This Circuit examines four factors in order to assess whether two nominally distinct entities are actually a single employer: '(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.'" *Shiflett v. Scores Holding Co.*, 601 F. App'x 28, 30 (2d Cir. 2015) (summary order) (citing *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240–41 (2d Cir.1995)). "Although no one factor is determinative[,] control of labor relations is the central concern." *Id.* (citing *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 227 (2d Cir. 2014). "Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss." *Brown*, 756 F.3d at 226.

Dobney makes sufficient factual allegations to satisfy each prong. First, as to interrelation of operations, Dobney alleges that Disney is responsible for reorganizations at ABC. (Compl. ¶¶ 108-113.) For example, Disney centralized distribution and commercialization activities of all of Disney's media and entertainment operations, including ABC and ABC News, into a single, global business segment called Disney Media & Entertainment Distribution. (*Id.* ¶ 110.) Dobney worked for this "Disney-run" segment. (*Id.* ¶ 113.) Second, as to centralized control of labor relations, Dobney alleges that jobs at Disney, including those at ABC, are posted on a centralized Disney website, that she applied for her position through the Disney career website, that she received an email congratulating her on her new position at Disney that referred her to "the Walt Disney New Hire Portal," and that Disney also maintains a company-wide benefits portal with company-wide plans. (*Id.* ¶¶ 115-120.) Disney also maintains company-wide policies and company-wide personnel initiatives. (*Id.* ¶¶ 125-127.) Dobney also alleges that Disney maintains a company-wide Human Resources team which addressed Dobney's human resources complaints and

14

questions, including those regarding parental leave, health benefits, and termination. (*Id.* ¶ 123.) Disney's Human Resources and Employee Relations personnel in California handled Dobney's informal and formal discrimination complaints. (*Id.* ¶¶ 129-135.) Third, as to common management, Disney and ABC share a single Board of Directors and centralized company management is responsible for coordination between the various segments and oversight by Disney, including the Disney Media & Entertainment Distribution segment. (*Id.* ¶¶ 136-141.) Finally, as to common ownership or financial control, Disney owns ABC, and ABC is subject to Disney directives to reduce budgets and headcounts. (*Id.* ¶¶ 142-147.) At this early stage, these allegations are enough to establish that ABC and Disney are sufficiently integrated that they may be treated as a single employer.

### IV.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

Defendants shall file answers to the complaint within 21 days after the date of this Opinion and Order.

The Clerk the Court is directed to close the motion at ECF No. 14.

SO ORDERED.

Dated: January 29, 2024
       New York, New York

_____
J. PAUL OETKEN
United States District Judge